1  Alan P. Block (SBN 143783)
   ablock@mckoolsmith.com
2  MCKOOL SMITH HENNIGAN, P.C.
   300 South Grand Avenue, Suite 2900
3  Los Angeles, California 90071
   Telephone:  (213) 694-1200
4  Facsimile:   (213) 694-1234

5  David Sochia (TX SBN 00797470)
   (Pro Hac Vice)
6  dsochia@McKoolSmith.com
   Ashley N. Moore (TX SBN 24074748)
7  (Pro Hac Vice)
   amoore@McKoolSmith.com
8  Alexandra F. Easley (TX SBN 24099022)
   (Pro Hac Vice)
9  aeasley@McKoolSmith.com
   McKool Smith, P.C.
10 300 Crescent Court, Suite 500
   Dallas, Texas 75201
11 Telephone (214) 978-4000
   Facsimile: (214) 978-4044

12
   James E. Quigley (TX SBN 24075810)
13 (Pro Hac Vice)
   jquigley@McKoolSmith.com
14 McKool Smith, P.C.
   300 W. 6th Street, Suite 700
15 Austin,, Texas 7870
   Telephone: (512) 692-8700
16 Facsimile: (512) 692-8744

17 Attorneys for Plaintiff
   PALO ALTO RESEARCH CENTER INC.

18                    **UNITED STATES DISTRICT COURT**

19                    **CENTRAL DISTRICT OF CALIFORNIA**

20

| | |
|---|---|
| 21  PALO ALTO RESEARCH CENTER INC., | Case No. 2:20-cv-10755 AB(MRWx) |
| 22                              Plaintiff. | **PALO ALTO RESEARCH CENTER INC.'S RESPONSE TO SNAP INC.'S MOTION TO DISMISS** |
| 23       v. | |
| 24  SNAP INC., | DATE: MARCH 19, 2021 |
| 25                              Defendant. | TIME: 10:00AM COURTROOM: 7B JUDGE: Hon. André Birotte Jr. |
| 26 | |

27

28

McKOOL SMITH, P.C.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................... 1

II.   LEGAL STANDARD ............................................................................ 1

    A.    Motions to Dismiss ................................................................. 1

    B.    Patent Eligibility Under 35 U.S.C. § 101 ................................. 2

        1.    *Alice* Step One ............................................................ 2

        2.    *Alice* Step Two ........................................................... 3

III.  ARGUMENT......................................................................................... 4

    A.    Snap's Motion Should be Denied for Failing to Meet and Confer. ........... 4

    B.    The '599 Claims Solve a Difficult Problem Using Mobile-Device Tools to Trigger the Display of Specific Content in a New Way. ............ 6

        1.    The '599 Patent is Not Directed to an Abstract Idea. ..................... 8

        2.    PARC's Plausible Allegations, When Taken as True, Show the '599 Claims Recite an Inventive Concept. .............................. 11

    C.    The '439 Patent Claims Patentable Subject Matter. ................................. 14

        1.    The '439 Patent Claims are Not Directed to an Abstract Idea ...... 15

        2.    PARC's Plausible Allegations, When Taken as True, Show the '439 Claims Recite an Inventive Concept. .............................. 18

    D.    The '362 Patent Uses Novel Techniques to Tag and Disseminate Tailored Content Over Networks. ........................................................... 19

        1.    The '362 Claims are Not Directed to an Abstract Idea. ................ 20

        2.    PARC's Plausible Allegations, When Taken as True, Show the '362 Claims Recite an Inventive Concept. .............................. 23

    E.    Snap's Behavior Contradicts Its § 101 Arguments. ................................. 24

    F.    If Needed, PARC Should Be Permitted to Amend its Complaint. ........... 24

IV.  CONCLUSION ..................................................................................... 25

McKool Smith, P.C.

PARC RESPONSE TO SNAP MOTION TO DISMISS        CASE NO. 2:20-CV-10755 AB(MRWx)

1

2

# TABLE OF AUTHORITIES

3
**Page(s)**

4

**CASES**

5
*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) .......................................................................passim

6

7
*Access Ins. Co. v. Peralta*,
   No. 8:15-cv-622-JLS, 2015 WL 13036938 (C.D. Cal. Oct. 13, 2015) ...............6

8

9
*Aftechmobile Inc. v. Salesforce.com, Inc.*,
   No. 4:19-cv-5903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020)..............25

10

11
*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)..................................................................................1, 2, 3

12

13
*Allconnect, Inc. v. Consumer Brands, LLC*,
   No. 2:18-cv-5959-DOC, 2018 WL 7377934 (C.D. Cal. Dec. 14, 2018) .....14, 19

14
*Amdocs (Israel) Limited v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) .......................................................................12

15

16
*Ancora Techs., Inc. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ...................................................................7, 14

17

18
*Baker v. Firstcom Music*,
   No. 2:16-CV-08931-VAP, 2017 WL 9500980 (C.D. Cal. Nov. 3, 2017) ..........6

19

20
*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) .......................................................................passim

21
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................1

22

23
*Berg v. Popham*,
   412 F.3d 1122 (9th Cir. 2005) ..........................................................................2

24

25
*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ........................................................................2

26

27
*BlackBerry Ltd. v. Facebook, Inc.*,
   No. 2:18-cv-1844-GW, 2019 WL 11670622 (C.D. Cal. Oct. 1, 2019)..21, 22, 23

28

MCKOOL SMITH, P.C.

ii

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
   59 F. Supp. 3d 974 (C.D. Cal. 2014) ..................................................................21

*CardioNet, LLC v. InfoBionic, Inc.*,
   955 F.3d 1358 (Fed. Cir. 2020) ................................................................. 10, 17

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
   No. 2:19-cv-09129-AB, slip op. (C.D. Cal. July 1, 2020) (Ex. F) ............... 14, 19

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) .......................................................... 4, 12, 23

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018) ...................................................................passim

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ...............................................................passim

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...............................................................passim

*Erickson v. Pardus*,
   551 U.S. 89 (2007)...................................................................................2

*FairWarning IP, LLC v. Iatric Sys.*,
   839 F.3d 1089 (Fed. Cir. 2016) ...............................................................17

*Genetic Techs. Ltd. v. Merial LLC.*,
   818 F.3d 1369 (Fed. Cir. 2016) ...............................................................3

*Hypermedia Navigation LLC v. Facebook, Inc.*,
   No. 4:17-cv-5383-HSG, 2018 WL 3932434 (N.D. Cal. Aug. 16, 2018)...........17

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ...............................................................11

*Kajeet, Inc. v. Qustodio, LLC*,
   No. 8:18-cv-1519-JAK, 2019 WL 8060822 (C.D. Cal. Nov. 1, 2019)..............25

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019) ......................................................... 8, 9, 23

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) .......................................................... 3, 10, 17

McKool Smith, P.C.

McKool Smith, P.C.

*Nagravision SA v. NFL Enters., LLC*,
No. 2:17-cv-3919-AB, 2018 WL 1807285 (C.D. Cal. March 9, 2018) ....... 13, 19

*Proxyconn, Inc.* v. *Microsoft Corp.*,
No. 8:16-cv-1102-DOC, 2016 WL 9109110 (C.D. Cal. Sept. 29, 2016) ..... 10, 17

*Singer v. Live Nation Worldwide, Inc.*,
No. 8:11-cv-427-DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ................. 6

*Speakware, Inc. v. Microsoft Corp.*,
No. 8:18-cv-1293-DOC, slip op. (C.D. Cal. June 6, 2019) (Ex. E) ............. 13, 19

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ................................................................... passim

*Thales Visionix, Inc. v. U.S.*,
850 F.3d 1343 (Fed. Cir. 2017) ............................................................................ 18

*Thomas v. Brett Sports & Entm't, Inc.*,
No. 5:16-cv-480-AB, 2016 WL 4472995 (C.D. Cal. Aug. 23, 2016) ................. 6

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ............................................................................ 3

*Ward v. Circus Circus Casinos, Inc.*,
473 F.3d 994 (9th Cir. 2007) ............................................................................... 4

**STATUTES**

35 U.S.C. § 101 ................................................................................................. passim

35 U.S.C. § 112 ..................................................................................................... 22

**OTHER AUTHORITIES**

FED. R. CIV. P. 15(a)(2) ........................................................................................ 24

Local Rule 7-3 ............................................................................................... 4, 5, 6

McKool Smith, P.C.

# I.   INTRODUCTION

Snap's Motion is the last of three § 101 salvos on PARC's Patents-in-Suit. The fallacy undercutting all Defendants' Motions remains the same. They reduce the claimed inventions to the point of absurdity, without any serious reference to the specifications, the problems addressed by the technology, or the advances of the claimed inventions over the prior art. In Snap's view, if it can drum up a half-baked analogy where a human could allegedly perform the claimed activity, then the patent must be ineligible for patent protection. This is not the law. It is not enough to trace the invention back to some real-world analogy, nor is the question simply whether anyone has ever done something by hand that somewhat resembles the claimed technology. Facebook and Twitter made this mistake, and Snap has followed suit.

Setting that aside, a proper § 101 analysis considers the claims in light of the specification, the problems the claimed inventions overcome, and the environment in which the claimed inventions operate. That is precisely why the *Alice* test starts with what the claims are "directed to," and not what the claims "recite." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). When the Court views the '599, '439, and '362 patents[1] through this lens, each of them is patent eligible. As explained below, they are directed to computer-specific problems, recite concrete techniques for solving those problems, and provide advances over the prior art. If the Court reaches the merits, Snap's Motion should be denied. However, since Snap failed to meet and confer in good faith, the Court should deny Snap's Motion on that basis as well.

# II.   LEGAL STANDARD

## A.   Motions to Dismiss

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must provide enough factual detail to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To make

---

[1] The '599 patent refers to USP 8,489,599, the '439 patent refers to USP 9,208,439, and the '362 patent refers to USP 8,966,362.

McKool Smith, P.C.

1  this determination, a court must accept the allegations of the complaint as true,

2  construe the complaint in the light most favorable to the pleading party, and resolve

3  all doubts in the pleader's favor. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Berg*

4  *v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005).

5      The Federal Circuit has restricted the invalidation of patents on a 12(b)(6)

6  motion to instances when "there are no factual allegations that, taken as true, prevent

7  resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green*

8  *Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Patent eligibility may

9  contain disputes over underlying facts, such as "[w]hether the claim elements or the

10  claimed combination are well understood, routine, [or] conventional." *Id.* at 1128.

11  And because patents are presumed valid, "[a]ny fact…that is pertinent to the invalidity

12  conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*,

13  881 F.3d 1360, 1368 (Fed. Cir. 2018) (internal citations omitted).

14      **B.    Patent Eligibility Under 35 U.S.C. § 101**

15      Patent-eligible subject matter is described in 35 U.S.C. § 101, which allows for

16  "any new and useful process, machine, manufacture, or composition of matter, or any

17  new and useful improvement thereof" to be patented. However, there are certain

18  exceptions, such as "[l]aws of nature, natural phenomena and abstract ideas." *Alice*,

19  573 U.S. at 216. To determine whether a patent claim contains permissible or

20  impermissible subject matter, the Supreme Court formulated a two-step test,

21  commonly called the "*Alice*" test. Step one considers whether the claims are directed

22  to one of the exceptions. *Id.* at 217. Step two considers whether the claim elements

23  individually or "as an ordered combination…transform the nature of the claim into a

24  patent-eligible application." *Id.* (internal quotations omitted). Since *Alice*, the Federal

25  Circuit has added detail to both steps of the analysis, as described below.

26      **1.    *Alice* Step One**

27      *Alice* step one asks "what the patent asserts to be the focus of the claimed

28  advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir.

2

2020) (internal quotations omitted). The Court must view the claims "in light of the specification." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). The Court should consider "any advances or advantage over the prior art[.]" *Genetic Techs. Ltd. v. Merial LLC.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016). For software inventions, the Federal Circuit has "routinely held software claims patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (collecting cases). Another factor is "whether the focus of the claimed advance is on a solution to 'a problem specifically arising in the realm of computer networks' or computers." *TecSec*, 978 F.3d at 1293 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014)).

The Supreme Court has recognized that "[a]t some level, 'all inventions…embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 132 S. Ct. at 1293 (ellipsis in original)). Thus, "courts must be careful" in step one of the analysis "to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). This is because "describing the claims at [a] high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. That is to be avoided at all costs. *Alice*, 573 U.S. at 217.

## 2.   *Alice* Step Two

If the character of the claims as a whole—read without oversimplification and in light of the specification—are directed to excluded matter, then the Court proceeds to *Alice* step two. Step two asks whether the claim elements, considered both individually and as an ordered combination, contain an "inventive concept." *Id.* Courts must again be careful, as "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *BASCOM*

*Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known conventional pieces." *Id.* And "implementing a well-known technique with particular devices in a specific combination…can be inventive." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019).

## III.   ARGUMENT

### A.   Snap's Motion Should be Denied for Failing to Meet and Confer.

Snap's Motion should be denied without reaching the merits because, prior to filing, Snap refused to describe the bases for its § 101 allegations and never engaged in a good faith discussion of the substance of its contemplated motion.

Local Rule 7-3 sets forth a party's meet and confer obligations, stating that "counsel contemplating the filing of any motion shall first contact opposing counsel to *discuss thoroughly*, preferably in person, *the substance of the contemplated motion* and any potential resolution." L.R. 7-3 (emphases added). The Court's Standing Order provides that the Rule will be "strictly enforced" and reiterates the language requiring *a movant* to "'discuss thoroughly…the substance of the contemplated motion[.]'" Dkt. 17 at 4 (omission in original). The Standing Order explains that "[t]he purpose of meeting and conferring is to attempt to obviate the need for a motion and thus avoid unnecessary Court intervention, or to narrow the scope of issues the Court must resolve; the parties *must* meet and confer in a good faith attempt to fulfill this purpose." *Id.* (emphasis in original). The remedy for failing to meet and confer in good faith is "strik[ing] or outright deny[ing] a motion or other relief." *Id.*; *see, e.g.*, *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir. 2007).

The pre-filing meet and confer requirement is clear and unequivocal. Despite acknowledging its obligation under Local Rule 7-3, Snap never disclosed the substance of its contemplated motion prior to filing. In its first notice on the subject, Snap sent PARC a letter (largely copying Facebook's) that included just 1.5 pages of text on "Section 101 Unpatentability." Dkt. 31-3. Rather than articulate any basis for

McKool Smith, P.C.

1    its § 101 allegations, Snap simply summarized the two-step *Alice* test and provided a

2    laundry list of cases finding patents ineligible. *Id.* Not once did Snap analyze any of

3    the Patents-in-Suit or apply the *Alice* test to explain why a particular claim was not

4    patent eligible. Snap did not name one patent number in its letter.

5        The parties participated in a meet and confer via conference call approximately

6    one week later. During the meet and confer, Snap refused to provide any additional

7    information about the substance of its § 101 allegations and instead pressed PARC to

8    describe how each of the Patents-in-Suit satisfies the *Alice* inquiry. *See* Dkt. 31-5.

9    PARC explained the difficulty of providing such a response given the lack of detail or

10   analysis in Snap's letter; however, in an effort to meet and confer in good faith, PARC

11   spent nearly 30 minutes describing on a patent-by-patent basis how they are directed

12   at patent-eligible subject matter. *See id.* ("As PARC explained during the call, it is

13   difficult, if not impossible, to divine Defendants' arguments and preemptively address

14   them with any specificity. Nor should such an ambush be the appropriate manner in

15   which a meet and confer is conducted."). At no point during the meet and confer, did

16   Snap "discuss…the substance of its contemplated motion[,]" as confirmed by both

17   parties' summaries of the call. L.R. 7-3; Dkt. 31-4 (email reflecting that no

18   information was disclosed by Snap); Dkt. 31-5 (PARC letter reflecting same). Two

19   days after the parties' meet and confer, PARC sent Snap a five-page letter outlining its

20   positions as to why each of the Patents-in-Suit are directed at patent-eligible subject

21   matter. *See* Dkt. 31-5. In that letter, PARC pointed out that Snap had not yet described

22   the bases for its § 101 allegations and had failed to meet and confer in good faith. *Id.*

23       On February 5, two weeks *after* the parties' meet and confer, Snap sent PARC a

24   three-sentence email identifying the patents that were the subject of Snap's

25   forthcoming Motion. Dkt. 31-8. Snap closed its email by asking for "PARC's

26   availability to meet and confer on these patents[.]" *Id.* PARC then asked if Snap was

27   "going to explain its views of patent eligibility for the '599, '439, and '362 patents."

28   *Id.* PARC explained that PARC "cannot hear [Snap's] positions for the first time on a

McKool Smith, P.C.

call later in the week and be expected to respond on the fly." *Id.* Snap responded with a generic suggestion that the claims of the Patents-in-Suit do not recite internet-specific solutions to internet-specific problems and/or do not recite inventive concepts. In its email, Snap failed to provide any reasoning to support its conclusory allegations. On February 15, PARC responded to Snap's latest arguments, once again detailing why the Patents-in-Suit pass muster under § 101. *Id.* PARC's email also stated that Snap "ha[d] failed to meet and confer in good faith" and "the basis for [Snap's] assertions remain[] woefully insufficient." *Id.* Snap then filed its Motion.

Despite PARC's repeated requests, Snap refused to provide any information about the bases for its § 101 allegations and never once "discuss[ed] the substance of the contemplated motion[,]" much less provided a "thorough" discussion of the motion's contents. Snap's pre-filing behavior constitutes a violation of Local Rule 7-3 and thus the Court should strike or deny Snap's Motion. *See* Dkt. 17 at 4; *Baker v. Firstcom Music*, No. 2:16-CV-08931-VAP, 2017 WL 9500980, at *4 (C.D. Cal. Nov. 3, 2017) (denying motion because counsel failed to discuss "'the substance or content'" of the motion prior to filing); *Singer v. Live Nation Worldwide, Inc.*, No. 8:11-cv-427-DOC, 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) (denying motion for failure to comply with Local Rule 7-3); *Thomas v. Brett Sports & Entm't, Inc.*, No. 5:16-cv-480-AB, 2016 WL 4472995, at *1 (C.D. Cal. Aug. 23, 2016) (denying motion for failure to comply with Rule 7-3); *Access Ins. Co. v. Peralta*, No. 8:15-cv-622-JLS, 2015 WL 13036938, at *1 (C.D. Cal. Oct. 13, 2015).

**B.    The '599 Claims Solve a Difficult Problem Using Mobile-Device Tools to Trigger the Display of Specific Content in a New Way.**

Snap suggests that the '599 patent is nothing more than a way to "improve users' ability to stay on top of their fast-paced lives," Mot. at 17, which is "a longstanding, fundamental part of human activity," Mot. at 19-20. Snap is wrong. The '599 claims solve computer-related problems (mobile devices being unable to learn and understand user behavior to enable better relevant content) with computer-related

McKool Smith, P.C.

McKool Smith, P.C.

1    solutions (using mobile-device specific information to make presentation decisions),

2    and are therefore patent eligible. *See, e.g., Ancora Techs., Inc. v. HTC Am., Inc.*, 908

3    F.3d 1343, 1348 (Fed. Cir. 2018) (holding that "specific technique[s] that depart[]

4    from earlier approaches to solve a specific computer problem" are patent eligible);

5    *Enfish*, 822 F.3d at 1339 (holding that the claims solve "a problem in the software

6    arts…[and] are not directed to an abstract idea"); *TecSec*, 978 F.3d at 1293; *DDR*, 773

7    F.3d at 1257-59 (finding "the claimed solution is necessarily rooted in computer

8    technology in order to overcome a problem specifically arising in the realm of

9    computer networks" and is therefore patent eligible).

10    To better understand the '599 claims and analyze them under the *Alice*

11   framework, a summary of the patent is helpful. When the '599 patent was filed,

12   mobile device makers had begun adding "computation power and a growing number

13   of communication features." '599 patent at 1:22-24. Despite the proliferation of these

14   devices (*e.g.,* phones, PDA, and laptops), they were "not capable of learning and

15   understanding the behavior of their users." *Id.* at 1:19-22, 1:41-43. In fact, "these

16   mobile devices [could not] determine when and how best to provide their users with

17   information or suitable entertainment content, because they [did] not take into account

18   the activities that their users [were] involved in." *Id.* at 1:43-46.

19    To address these issues, the '599 patent "provide[s] a content management

20   system for organizing and delivering packages of audio and visual content to a user in

21   response to activities being performed by the user, and in response to a number of

22   environmental factors associated with the user." *Id.* at 3:51-55. The claims are

23   directed to this solution by reciting a specific technique for receiving an information

24   package, and then presenting that information only when certain triggering conditions

25   based on users' mobile device context are met. Claim 1, for example, requires

26   receiving a content package including one or more content pieces and rules including

27   a trigger condition for presenting the content piece and an expected response. *Id.* at

28   claim 1. The system works by "receiv[ing] a set of contextual information with respect

7

McKool Smith, P.C.

to the user, and processes the contextual information to determine a context which is associated with an activity being performed by the user." *Id*. This contextual information can come "from a number of input sources (*e.g.*, a global positioning system (GPS) device, or an accelerometer), which reflects basic information associated with the user." *Id.* at 4:33-36, 4:36-46, 6:23-7:2. The system can "determine a context associated with a user and/or operating conditions of the mobile device based on contextual information." *Id.* at 7:30-33, 7:33-45. And the system "can be programmed to infer specific contexts about the user based on contextual information." *Id.* at 7:46-59. Then, if the user's context or activity "satisfy a trigger condition," the system "selects content from a content database…to present to the user." *Id.* at claim 1. These triggers can cause different contexts to drive the presentation of different content. *Id.* at 3:60-4:6, 8:39-50. Finally, the system receives a response from the user corresponding to the presented content, determines whether the response matches an expected response, and performs an action if it does. *Id.* at claim 1. The '599 patent thus advances the state of mobile devices by enabling them to account for their users' activities.

### 1.   The '599 Patent is Not Directed to an Abstract Idea.

For *Alice* step one, the Court should "look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019). The Court must also consider the claims "as a whole, and in light of the specification." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) ("*DET*"); *see also TecSec*, 978 F.3d at 1295 (holding that the "specification…shows that the claims at issue are directed at solving a problem specific to computer data networks"). For software innovations, this decision turns on whether the claims are directed to (1) improvements to the functionality of a computer or network platform itself or (2) a solution to a problem specifically arising in the realm of computers or networks. If so, they are patent eligible. *TecSec*, 978 F.3d at

1293; *Koninklijke*, 942 F.3d at 1149-50.

The '599 patent claims meet *Alice* step one. The Federal Circuit's *TecSec*, *DET*, *Enfish*, *DDR*, and *Visual Memory* decisions are each instructive. For instance, the Federal Circuit in *TecSec* held claims eligible under step one where "the claim language and specification establish…that the claims are directed to improving a basic function of a computer data-distribution network, namely, network security." 978 F.3d at 1296. In doing so, the court criticized the defendant's attempt to disregard claim elements. *Id.* at 1295. Here, too, the '599 claims are directed to improving a basic function of mobile devices by teaching how to use mobile device input sources  to account for specific mobile device conditions that can then trigger the presentation of content. As in *TecSec*, Snap disregards claim elements—including the full and proper scope of "contextual information," "trigger conditions," and "current context"— to criticize the patent. Snap's efforts, like the defendant's in *TecSec*, should be rejected.

*DET* is also instructive. In *DET*, the Federal Circuit held electronic spreadsheet claims eligible because they "improv[ed] computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets." 906 F.3d at 1007-08. In that case, the Federal Circuit considered the specification's discussion of the prior art to determine how the claims improved the existing technology. *Id.* at 1008. The '599 patent likewise improves computer functionality. It addresses the technological problem of "mobile devices…not [being] capable of learning and understanding the behavior of their users." '599 patent at 1:19-22, 1:41-43. And the '599 solution improved mobile device functionality to account for the mobile device's surroundings, making it patentable. *DET*, 906 F.3d at 1007-08.

The Federal Circuit's *Enfish*, *DDR*, and *Visual Memory* decisions are similarly helpful. In *Enfish*, the Federal Circuit held self-referential table claims eligible because they improved the way computers operated and handled data. 822 F.3d at 1333. In *DDR*, the Federal Circuit held "hybrid web page" claims patent eligible because they "overcome a problem specifically arising in the realm of computer

McKool Smith, P.C.

networks." 773 F.3d at 1257. And in *Visual Memory LLC v. NVIDIA Corp.*, the Federal Circuit held claims eligible that were "directed to an improved computer memory system." 867 F.3d 1253, 1259 (Fed. Cir. 2017). Like the *Enfish*, *DDR*, and *Visual Memory* patents, the '599 patent overcomes a problem unique to, and improves, computers and mobile devices. The '599 patent is tightly tethered to the technology it improves. The '599 claims solve the mobile device-specific problem of being unable to learn and understand users' behavior by teaching new techniques for considering mobile-device specific information to make presentation decisions.

Snap's contrary arguments are unpersuasive. First, Snap criticizes the '599 patent as being merely functional. *See, e.g.*, Mot. at 21. Yet the claims are detailed and specific. Certain types of content and triggering information is received, mobile device contextual information is received and processed to determine the device's context, and information is presented if a trigger condition is met. The invention is "targeted at achieving a specific improvement in computer technology," namely mobile devices. *See, e.g.*, *Proxyconn, Inc.* v. *Microsoft Corp.*, No. 8:16-cv-1102-DOC, 2016 WL 9109110, at *3-6 (C.D. Cal. Sept. 29, 2016) (denying motion to dismiss where claims were "targeted at achieving a specific improvement in computer technology through rules tailored to the issue of redundant data transmission through networks").

Second, Snap's cited cases are unpersuasive. Mot. at 20-21 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) ("*IV/Capital One*"); *Bridge & Post, Inc. v. Verizon Comm'ns., Inc.*, 778 App'x 882, (Fed. Cir. 2016)). As a preliminary matter, Snap runs into the trap of oversimplifying the claims as merely "tailoring information," which the Federal Circuit has repeatedly cautioned against. *McRO*, 837 F.3d at 1313; *TecSec*, 978 F.3d at 1293; *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020). Contrary to Snap's oversimplification, the claims here solve specific computer-related problems (mobile devices being unable to learn and understand user behavior to enable better tailoring

of content) with computer-related solutions (using mobile-device specific information to make presentation decisions). Furthermore, the claims in *IV/Capital One* involved "[t]ailoring information based on the time of day." 792 F.3d. at 1370. The claims here, on the other hand, are directed to a specific technique for using mobile device detector information to create a better mobile device experience. The claims are not directed to merely tailoring content. And the Federal Circuit described the *Bridge & Post* claims as being directed to "[t]ailoring advertisements based on real time information about the user and their location." 778 App'x at 884. Again, this is unlike the mobile device-specific claims solving a mobile device-specific problem here.

Third, Snap's suggestion that the '599 patent does not solve an "Internet-specific problem" is wrong. Mot. at 22-23. The patent explains early on that the context of the invention is advancements in communication with others around the world. '599 patent at 1:13-24, 4:64-67, 6:58-7:2, and claims 11, 18, and 25. Moreover, the patent notes that "[m]obile devices often have access to the Internet, either via a Wi-Fi connection and/or a cellular network," and that "[i]n some embodiments, [the] content management system…utilizes an Internet connection to gather public context and content information." *Id.* at 6:58-62. It is in this context that the claims plainly encompass and relate to improving the use of mobile devices connected to networks like the Internet. This is unlike *Trading Techs. Int'l, Inc. v. IBG LLC*, which involved claims that were "focused on providing information to traders in a way that helps them process information more quickly," and "not on improving computers or technology." 921 F.3d 1378, 1385 (Fed. Cir. 2019). Indeed, the *Trading Techs.* claims merely involved "displaying [profit and loss] values along an axis, displaying an indicator representing market information at a location on the axis, and moving the indicator to a second location." *Id.* The claims here are entirely different.

### 2. PARC's Plausible Allegations, When Taken as True, Show the '599 Claims Recite an Inventive Concept.

The '599 patent claims pass *Alice* step one, and it is unnecessary to analyze

McKool Smith, P.C.

*Alice* step two. Even so, the '599 patent claims plainly recite an inventive concept. As an initial matter, Snap never addresses whether the '599 patent's inventive concept— using certain types of mobile device contextual information to ascertain context and trigger the display of certain types of content—is actually an inventive concept. This idea is explained in the patent (*see* '599 patent at 1:50-62), in the claims (*see* '599 patent at claims 1, 12, 19), and in the Complaint (Dkt. 1 ¶¶ 30-37). The patent itself explains the difficulties faced by the prior art: that mobile devices (1) "[were] not capable of learning and understanding the behavior of their users;" and (2) "[could not] determine when and how best to provide their users with information or suitable entertainment content, because they do not take into account the activities that their users are involved in." '599 patent at 1:41-46; *see also* Dkt. 1 ¶¶ 31-32 (discussing same). It was these difficulties faced by mobile devices at the time that make the '599 patent so unique. These are exactly the sort of inventive concept allegations that the Federal Circuit has held require denial of motions to dismiss. *See, e.g.*, *Cellspin*, 927 F.3d at 1318; *BASCOM*, 827 F.3d at 1349-50 (holding that "install[ing] a filtering tool at a specific location remote from end users" was an inventive concept despite the tool itself and the hardware components being well known); *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) (holding that even though "[t]he solution requires arguably generic components, including network devices[,]…these generic components operate in an unconventional manner to achieve an improvement in computer functionality").

The '599 patent's file history confirms the inventive nature of the claims.[2] Specifically, the patentee explained that the prior art does not disclose "selecting a piece of contact to be presented from a plurality of content pieces based on the user context" or "determining whether a user response corresponding to a presented content piece matches an expected response, and performing an action on the content

---

[2] As explained in a contemporaneously filed request, PARC asks this Court to take judicial notice of the prosecution histories.

McKOOL SMITH, P.C.

piece based on the outcome of the determination." *See* Ex. A at 13;[3] Ex. B at 12. After the patentee filed an appeal to the PTAB arguing the inventiveness of the claims, the examiner then allowed the claims on those grounds. *See* Ex. C; Ex. D at 3.

Instead of addressing the '599 patent's inventive concept or the patent's inventiveness, Snap selectively picks out a number of individual terms in the claims, oversimplifies their meaning, and wrongly concludes that the claims contain nothing inventive. For instance, Snap says that "'contextual information' can be collected using known techniques" and that "mobile devices 'often include[] presentation mechanisms.'" Mot. at 24. But these elements cannot be viewed in isolation as Snap suggests. *BASCOM*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art.").

Snap also ignores that critical claim elements, including "contextual information," "trigger condition," and "context," all relate to the inventive nature of the claims in combination. Indeed, the patentee called out the importance of the claimed "trigger condition" in the prosecution history, and the dependent claims here provide specific details about the narrowly-tailored nature of "contextual information" (claims 10, 17, 24) and "context" (claims 11, 18, 25).[4] Thus, dismissal on this record is inappropriate. *See Aatrix*, 882 F.3d at 1128 (holding that "[w]hether the claim elements or the claimed combination are well-understood, routine, [or] conventional is a question of fact….[that] cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss…."); *Speakware, Inc. v. Microsoft Corp.*, No. 8:18-cv-1293-DOC, slip op. at 9 (C.D. Cal. June 6, 2019) (denying motion to dismiss where patentee "alleges that the circuity, which transmits signals to speech recognition mode by voice commands, in combination with the other elements of the

---

[3] All exhibits are attached to the Declaration of Alexandra F. Easley.

[4] Snap apparently contests PARC's interpretation of each of these terms (Mot. at 18), and dismissal is therefore premature. *Nagravision SA v. NFL Enters., LLC*, No. 2:17-cv-3919-AB, 2018 WL 1807285 (C.D. Cal. March 9, 2018).

McKool Smith, P.C.

McKool Smith, P.C.

claim, makes the system 'truly hands-free' in comparison to previous voice-operated remote-control systems") (Ex. E); *Allconnect, Inc. v. Consumer Brands, LLC*, No. 2:18-cv-5959-DOC, 2018 WL 7377934, at *7 (C.D. Cal. Dec. 14, 2018) (denying motion to dismiss "given the express recitation of databases and the allegations that the claims entail an unconventional technological solution through a specialized database permitting powerful data analytics and comparing, via a computer processor, the received capabilities, the claims are not properly dismissed at this stage").

Nor are the claims merely functional, as Snap suggests. Mot. at 24-25. Instead, as discussed above for *Alice* step one, the claims recite a specific, detailed set of steps that explain *how* to trigger and display information. *See, e.g.*, '599 patent at claim 1. Snap's attempts to caricature the claims highlights the weakness of its argument.

Taking PARC's allegations as true, there is a factual dispute that prevents resolving § 101 as a matter of law. *Aatrix*, 882 F.3d at 1129. Snap "has not satisfied its burden of showing that no issue of fact exists as to whether the ordered combination of limitations is unique or inventive." *Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-09129-AB, slip op. at 12 (C.D. Cal. July 1, 2020) (Ex. F).

## C.     The '439 Patent Claims Patentable Subject Matter.

Snap suggests that the '439 patent is nothing more than a person noticing a dent in their car and calling their insurance agent, or a banker seeing a large withdrawal and calling the customer. Mot. at 12. That is, Snap suggests that the '439 patent "imitates basic human behavior and practices" and does not solve a technological problem or involve a technological solution. Mot. at 1, 12, 14-15. Snap is again wrong. The '439 claims solve specific, computer-related problems (developing context-aware systems for mobile devices) with computer-related solutions (storing, in an unconventional "context graph," information gathered from a mobile device to then determine when to notify recommenders of changes to the context graph), and are therefore patent eligible. *See, e.g., Ancora*, 908 F.3d at 1348; *Enfish*, 822 F.3d at 1339; *TecSec*, 978 F.3d at 1293; *DDR*, 773 F.3d at 1257-59.

A brief overview of the '439 patent is helpful in applying *Alice*. The '439 patent inventors saw that "software on the mobile devices that detect and make use of physical surroundings can increasingly contribute to improving the lifestyle of mobile device users." '439 patent at 1:13-17. One way to improve the mobile device user lifestyle was a "context-aware system" that "adapts to changing conditions detected from the environment, such as location and movement of the mobile device, nearby devices, and other surrounding conditions." *Id.* at 1:22-26. Yet it "takes considerable time and expense to develop such context-aware systems." *Id.* at 1:14-33.

The '439 patent inventors therefore sought to solve this problem, by claiming a specific technique for receiving certain mobile device-specific context information, storing that data in an unconventional context graph, and then notifying relevant individuals of certain changes in the mobile device's context. *See id.* at claim 1. Contextual data describes, for example, "a computing context detected by a mobile device client, such as physical surroundings and/or application and/or operating system context" that is collected "using detectors such as a GPS, an accelerometer, and/or a compass." *Id.* at 2:60-62, 3:49-51, 4:31-40. Claim 1 further requires using this data to modify a context graph that stores user behavior information. *Id.* at claim 1. One exemplary context graph "is a per-user, in-memory, graph-based model that stores facts and assertions about user behavior and actions." *Id.* at 7:28-31. The context graph can be used, for instance, by "recommenders [to] modify implementation-specific user models based on the data received from the context graph, and make recommendations based on the information-specific user models." *Id.* at 6:67-7:4. Finally, a recommender is notified based on certain changes to the context graph. *Id.* at claim 1. "Such a contextual intelligence system facilitates real-time processing of contextual information and support[s] contextual application development for Web and mobile applications." *Id.* at 2:53-55.

### 1. The '439 Patent Claims are Not Directed to an Abstract Idea

The '439 claims meet *Alice* step one. The Federal Circuit's *Enfish*, *DET*, *DDR*,

McKool Smith, P.C.

and *Visual Memory* decisions, among many others, are instructive. These cases show that claims directed to improved computer functionality are patent eligible. For example, the *Enfish* claims recited tables that offered "increased flexibility, faster search times, and smaller memory requirements," and were thus patent eligible. *Enfish*, 822 F.3d at 1333. Likewise, the *DET* claims "improv[ed] computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets," 906 F.3d at 1007-08, and the *DDR* "hybrid web page" claims "overc[a]me a problem specifically arising in the realm of computer networks," 773 F.3d at 1257. Snap concedes this point, but disagrees that the '439 claims contain such improved functionality. Mot. at 3, 10-12.

The '439 claims also improve computer functionality for similar reasons. The '439 patent's unconventional "context graph" improves the way that data is stored and used. '439 patent at 6:59-7:52 (discussing context graph features). The '439 context graph also offers a flexible, superior way to handle mobile device data. *Id.* at 7:36-40 ("The system can store data in [the] context graph…using a type-less approach to data storage. Context graph…may store data according to different data models, including data models for entity-relationship data and unstructured data."); 7:41-43 ("In one embodiment, the system can manage context graphs with greater numbers of nodes using cross module interconnections."); 7:47-49 ("The components that transfer event information into context graph 406 can be specially developed for specific applications."). It "solve[s] the problem of efficiently developing context aware systems by providing a generic contextual intelligence platform that may be adapted for specific applications." *Id.* at 2:49-52. It does so, for instance, by using specifically-claimed steps, including the use of the then-unconventional context graph, that "facilitate[s] real-time processing of contextual information and support contextual application development for Web and mobile applications." *Id.* at 2:53-55.

Snap's contrary arguments are unpersuasive. First, much like the '599 patent, Snap criticizes the '439 patent as being merely functional and "result-focused." *See,*

McKool Smith, P.C.

*e.g.*, Mot. at 1, 11, 12. Yet the patent's claims are not merely functional with result-oriented aspirations. Instead, they are detailed and specific. Mobile device-specific data from mobile device detectors is received, a context graph is updated with relevant changes, and a recommender is notified of changes as appropriate. In addition, although the '439 invention certainly contemplates a "generic contextual intelligence platform that may be adapted for specific applications," it is still directed to a concrete, mobile-device specific issue. '439 patent at 2:51-52. The '439 invention is "targeted at achieving a specific improvement in computer technology," namely mobile devices. *See, e.g.*, *Proxyconn*, 2016 WL 9109110, at *3-6. Achieving the invention in a new way—the context graph—similarly differentiates the claims here. *Hypermedia Navigation LLC v. Facebook, Inc.*, No. 4:17-cv-5383, 2018 WL 3932434, at *4 (N.D. Cal. Aug. 16, 2018) (denying motion to dismiss where patent claimed "a specific online search mechanism by creating web programs that are geared towards entertaining and presenting the user with desirable information in a new way: through 'linearly linked websites'").

Second, Snap suggests that the '439 patent relates to simply collecting, processing, and sending information. Mot. at 13. As a preliminary matter, Snap again runs into the oversimplification trap. *McRO*, 837 F.3d at 1313; *TecSec*, 978 F.3d at 1293; *CardioNet*, 955 F.3d at 1371. Moreover, as detailed above, the claims here solve specific, computer-related problems (developing context-aware systems for mobile devices) with computer-related solutions (storing in an unconventional "context graph" data gathered from mobile device detectors to determine when to notify recommenders of changes to the context graph).

Third, Snap's reliance on *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089 (Fed. Cir. 2016) is unhelpful. *FairWarning* involved claims that "'merely implement an old practice in a new environment'" without being "directed to a specific improvement to the way computers operate" as in *Enfish*. *FairWarning*, 839 F.3d at 1094-95 (quoting *Enfish*, 822 F.3d at 1336). Yet, as explained above and below, the

PARC RESPONSE TO SNAP MOTION TO DISMISS               CASE NO. 2:20-CV-10755 AB(MRWx)

McKOOL SMITH, P.C.

claims are directed to an improvement in mobile device technology. And the '439 patent uses the unconventional context graph to achieve that improvement.

### 2. PARC's Plausible Allegations, When Taken as True, Show the '439 Claims Recite an Inventive Concept.

As discussed above, the '439 patent claims pass *Alice* step one. Analyzing *Alice* step two is unnecessary. Still, the '439 patent claims recite an inventive concept. Snap argues that the claimed context graph is not an inventive concept because it is "akin to human memory." Mot. at 16. This is incorrect on multiple levels. First, the '439's unconventional context graph (used to trigger the display of certain types of content on mobile devices and a notification to a recommender of the change) is an inventive concept. This is explained in the patent specification (*see* '439 patent at 1:38-48), in the claims (*see* '439 patent at claims 1, 7, 13), and in the Complaint (Dkt. 1 ¶¶ 59-64). And the '439 patent's prosecution history confirms the inventive nature of the claims. Specifically, the patentee explained that the prior art does not disclose the claimed context graph or a notification of a change being sent to a recommender. *See* Ex. G at 11 (stating that the prior art "does not disclose a system that, in response to determining that there exists a registration for notification of changes that matches a modification to the context graph, sends a notification of context graph change to a recommender," and that the prior art "does not describe a context graph"). The examiner then allowed the claims. *See* Ex. H.

Second, new data or memory constructs, like the claimed context graph, can be patentable. *See Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (stating that "claims directed to a new and useful technique for defining a database that runs on general-purpose computer equipment are patent eligible"); *Visual Memory*, 867 F.3d at 1259 (finding claims directed to a memory system with programmable characteristics patent eligible). As noted above, the claimed context graph is an inventive concept, as confirmed by the claims, specification, Complaint, and prosecution history. And Snap's bare attorney-argument to the contrary is

1  irrelevant. *See, e.g.*, *Speakware*, No. 8:18-cv-1293-DOC, slip op. at 9 (Ex. E);

2  *Allconnect*, No. 2:18-cv-5959-DOC, 2018 WL 7377934, at *7.

3      Lastly, Snap highlights a factual dispute between the parties: what "context

4  graph" means and whether it is inventive. Mot. at 16. As just noted, the specification,

5  claims, prosecution history, and complaint all show that the "context graph" is a new,

6  inventive way to store information. Snap's mere attorney argument does not change

7  this. *Nagravision SA*, 2018 WL 1807285 (denying motion to dismiss as claim term

8  needed construction).

9      Taking all allegations as true, there is a factual dispute preventing resolution as

10  a matter of law. *Aatrix*, 882 F.3d at 1129. Snap has not met its burden, and its Motion

11  should be denied. *Ceiva*, No. 2:19-cv-09129-AB, slip op. at 12 (Ex. F).

12      **D.**    **The '362 Patent Uses Novel Techniques to Tag and Disseminate**
             **Tailored Content Over Networks.**

13

14      Snap describes the '362 invention as the automation of a "manual" process,

15  likening it to a pen-and-paper document mark-up. Mot. at 5-6. Snap's inapt analogy

16  dramatically oversimplifies the invention. To recognize Snap's sleight of hand, one

17  must first consult the specification. PARC did not describe a "manual" paper

18  document mark-up process. Rather, PARC noted the various problems with

19  conventional—yet electronic—document editing systems. They include "only

20  send[ing] information at the level of entire documents," or "manually extract[ing] the

21  specific content to be shared," which "makes it difficult to reestablish context for the

22  information or to incorporate responses into the original content." '362 patent at 1:18-

23  29. The "manual" process is still a computer-specific process. It "typically require[s]

24  special sharing-related interfaces or applications," and "specialized functions, such as

25  requests for comments, edits, or approval, [] often performed in an ad-hoc fashion

26  using, for example, context provided in an email message." *Id.* at 1:29-40. The

27  problem originated in the cumbersome way in which users collaborated and shared

28  electronic information.

McKool Smith, P.C.

1   The '362 patent then describes the solution, which is far more complex than
2   marking up a paper document. The "how" that Snap complains is missing from the
3   '362 is right there in the text of the claims. A user of the '362 document editing
4   system first inputs a natural language tag. *Id.* at claim 1. The tag is inserted inline and
5   contains a receiving user, a command, and the portion of the document on which the
6   command will be executed. *Id.* The invention then processes the tags and disseminates
7   the portion indicated to the receiving entity to facilitate the action specified. *Id.* To
8   help the recipient perform the tagged action, the invention can provide the user with
9   context for the tagged portion of the document. *Id.* at 3:15-21. This "reduce[s] the
10  information the recipient needs to consider," and "increase[s] the likelihood that the
11  recipient will be able to respond in a timely fashion, and the likelihood that the
12  response will be more focused on the issues of concern." *Id.* at 3:27-31. In addition,
13  the patent's specification teaches how the user determines what the recipient does with
14  the content. For example, the user may "show" or "share" content. *Id.* at 4:19-24.
15  When a user "shares" content the receiving entity may "view and change the content
16  and the modified content can be incorporated into the original content." *Id.* When a
17  user "shows" content, the recipient may view the content but any changes will not be
18  incorporated. *Id.* By allowing the user to specify the amount of context associated
19  with a tag, and restricting the recipient's available responses to the tagged
20  information, the '362 patent allows communities to share content in more
21  constructive, targeted, and efficient ways.

**1.     The '362 Claims are Not Directed to an Abstract Idea.**

22
23  Snap first argues that the '362 is nothing more than the automation of a pen-
24  and-paper document editing process. This analogy is unsuitable. Snap ignores that the
25  claimed "dissemination" of the tagged document controls the amount of information
26  shared and the actions the recipient can take. '362 patent at 4:13-19. In sum, the
27  sender may limit the receiving entity's ability to view certain portions of the
28

McKool Smith, P.C.

document, and may also preclude the receiver from making any changes to the document. All of these features are lost in Snap's analogy. For example, there is no opportunity to lock out the recipient's ability to make changes in a paper document. As another example, the receiving entity may deviate from the requested action (*e.g.,* providing comments and corrections when the document asked for final approval). Nor do paper documents suffer from version control issues ripe in most electronic document collaborations. Snap's analogy is improper. *See DET*, 906 F.3d at 1011 (holding that it is "not enough [] to merely trace the invention to some real-world analogy"); *see also California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 995 (C.D. Cal. 2014) ("The problems of pencil-and-paper analysis are heightened in the context of software…[and] can mislead courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer."); *BlackBerry Ltd. v. Facebook, Inc.*, No. 2:18-cv-1844-GW, 2019 WL 11670622, at *25 (C.D. Cal. Oct. 1, 2019) (finding that photo tagging has no "true pre-computer analogue" even though "a person could take a stack of sticky notes [and] …slap[] a desired [sticky note] tag on a hard-copy photo.").

When the Court considers the claim language (rather than Snap's inapt analogy), the controlling authority shows the '362 claims are not an abstract idea. First, the '362 claims are patent eligible because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257. In the scenario Snap suggests, a party marking up a paper document might choose to share only a small part of the document for review, knowing that it will be easy to re-integrate a printed page back into the original document. On the other hand, the '362 explains the entire document must be sent or the user must "manually extract the specific content to be shared[,]" which "makes it difficult to reestablish context for the information or to incorporate responses into the original content." '362 patent at 1:18-29. This loss of context is a computer-specific problem.

The '362 patent solves this problem using a computer-specific solution: tags that control the amount of information shared with the recipient, and the actions he/she can take. *Id.* at 4:13-23. Since the claims involve a specific solution to a known computer problem, they are not abstract. *DDR*, 773 F.3d at 1257; *see also DET*, 906 F.3d at 1008 (holding tabs in an electronic spreadsheet patent eligible for solving a "known technological problem in computers in a particular way—by providing a highly intuitive, user-friendly interface with familiar notebook tabs….").

This stands in stark contrast to Snap's *Univ. of Fl. Res. Found. Inc. v. Gen. Elec. Co.* case. 916 F.3d 1363, 1367 (Fed. Cir. 2019). In *Univ. of Fl.*, the court found the patent claims invalid because they sought to "automate 'pen and paper methodologies'" for entering medical information on patient charts. *Id.* In the specification, the patent noted that the problem the patent sought to solve was the "time consuming and expensive" process of manual entry of medical charting information from paper charts to a computer, and to reduce transcription errors within this process. *Id.* at 1366. The court then noted that because the claims merely added a computer, and did not improve the computer's functionality, the patent's claims were invalid. *Id.* (citing *Enfish*, 822 F.3d at 1336). The '362 claims a computer-related solution to a computer-related problem, and therefore is nothing like *Univ. of Fl.*

Snap next argues the "how" is missing from the claims, and must therefore be abstract. Not so. The claims explain the "how" by reciting the format and content of the tag and how it operates to control the claimed dissemination of the document. Further, the claims must be read in light of the specification, which explains a number of additional details, including "exemplary Visual Basic code for tag processing." '362 patent at 2:56-58, 10:5-46 (TABLE 1). And the "how" is "an enablement issue under 35 U.S.C. § 112, *not an eligibility issue under § 101.*" *Visual Memory*, 867 F.3d at 1261 (emphasis added). Snap's demand for more is irrelevant to its Motion.

Finally, Snap's reliance on *IV/Capital One* fails. The *IV/Capital One* claims did not include the word "tag," nor was it the basis for which the Federal Circuit ruled.

McKool Smith, P.C.

850 F.3d at 1338-39. At bottom, the Federal Circuit held that the claims allowed a user to "update XML documents," but noted that limiting the claims to XML documents did "not render an otherwise abstract concept any less abstract." *Id.* at 1339. And in distinguishing *IV/Capital One*, the Federal Circuit has found that claims specifically reciting an implementation that improves a prior art system are patent eligible. *Koninklijke*, 942 F.3d at 1153. So too is the case for the '362 claims. Providing the claimed inline tag, which identifies the portion of the document to be disseminated along with actions to be taken, is a specific solution that improves the prior art's requirement to provide the whole document or manually clip out relevant portions while losing invaluable context. For the same reasons noted in *Koninklijke*, *IV/Capital One* is different from the facts here. The '362 claims solve a computer-specific problem and therefore pass muster under *Alice* step one.

 **2.**  **PARC's Plausible Allegations, When Taken as True, Show the '362 Claims Recite an Inventive Concept.**

As the '362 claims pass *Alice* step one, it is unnecessary to consider step two. Even so, the claims survive this step as well. Snap once again fails to analyze any of the relevant claim elements, assuming that they involve "generic technology, none of which the Plaintiffs invented." Mot. at 9. This is not the right question. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350; *see also Cellspin*, 927 F.3d at 1318 (finding that "implementing a well-known technique with particular devices in a specific combination…can be inventive.").

To survive Snap's Motion, Plaintiff need only show "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317; *see also Aatrix*, 882 F.3d at 1128; *BlackBerry Ltd. v. Facebook, Inc.*, No. 2:18-cv-1844-GW, 2018 WL4846912, at *7 (C.D. Cal. Aug. 2, 2018). PARC's claims, specification, Complaint, and prosecution history do just that. The '362 specification notes the problem associated with conventional document editing systems, and the

McKool Smith, P.C.

McKool Smith, P.C.

1   inventive concept to overcome it (*i.e.,* the use of inline tags that control the amount of

2   the document shown to the recipient and the actions that the recipient may take on the

3   document). The Complaint reiterates these concerns. Dkt. 1 ¶¶ 85-90. And the

4   prosecution history states much the same. *See, e.g.,* Ex. I at 8 (stating the prior art

5   "does not disclose a tag that indicates an action to be performed on a portion of the

6   document, and indicates a receiving entity corresponding to the action" (emphases

7   omitted)); Ex. J at 8 (stating that the prior art does not disclose "inserting a tag inline

8   within the document that indicates an action to be performed, and disseminating the

9   document portion indicated by the tag to a receiving entity corresponding to perform

10  the action" (emphases omitted)); Ex. K at 9. Thus, the claims, specification,

11  prosecution history, and Complaint provide ample allegations that—when taken as

12  true—show the '362 claims contain an inventive concept. For all the reasons noted

13  above, the '362 claims include an inventive concept and are therefore patent eligible.

14  **E.      Snap's Behavior Contradicts Its § 101 Arguments.**

15          When it suits them, Snap defends its own patents on the very same basis it now

16  uses to challenge PARC's. For example, Snap patented a method of "determin[ing] a

17  price-schedule to distribute media content" in USP 10,915,911 (the "'911"). During

18  prosecution, Snap argued its '911 claims were eligible under *DDR Holdings* "because

19  they were necessarily rooted in computer technology in order to overcome a problem

20  specifically arising in the realm of computer technology." Ex. L at 10. Snap pointed to

21  the prior art problems described in the specification and stated that the claims address

22  the limitations of the prior art. *Id.* Much like PARC suggests above, Snap told the

23  USPTO that "there is no 'pre-computer' business practice directly analogous to the

24  embodiments recited in the [] claims." *Id.* at 11. It is incredible that Snap now argues

25  the very opposite in its Motion.

26  **F.      If Needed, PARC Should Be Permitted to Amend its Complaint.**

27          A district court should freely give leave to amend a complaint "when justice so

28  requires." FED. R. CIV. P. 15(a)(2). In the event that Snap's Motion raises matters of

concern for the Court, PARC requests leave to address any such issues in an amended Complaint. *See Aatrix*, 882 F.3d at 1127 (holding that "the proposed amended complaint, which alleges facts directed to the inventive concepts in [the] claimed invention[s], would not be futile."); *Kajeet, Inc. v. Qustodio, LLC*, No. 8:18-cv-1519-JAK, 2019 WL 8060822, at *1 (C.D. Cal. Nov. 1, 2019); *Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 4:19-cv-5903-JST, 2020 WL 6129139, at *12 (N.D. Cal. Sept. 2, 2020) (granting leave to amend to "plead patent eligibility").

This is especially important here, as Snap did not provide the basis of its § 101 allegations until filing its Motion. Although Snap attempts to shift the blame to PARC, it is Snap that failed to raise any particulars of its Motion. This precluded PARC from understanding Snap's arguments and being able to counter those arguments with the information noted above. And, to be clear, PARC stated that it could not amend its Complaint given Snap's "unarticulated, baseless concerns," but noted that "PARC's statement should not be taken as foreclosing future amendments…if the circumstances merit such an amendment." Dkt. 31-5 at 4.

## IV. CONCLUSION

As with the other Defendants, Snap divorces the claims from the specification, and ignores or assigns no meaning to the words of the claims, all in an effort to reduce the claims to "mimic fundamental human behavior." The claims are more than that.

Had Snap offered any insight into the basis for filing its Motion, the parties may have been able to better understand their respective positions. However, PARC doubts that would have reduced any burden on the Court as Snap has only used this process to try and extort numerous unjustified delays, and failed to address any of the points raised in PARC's multitude of correspondences on the subject. For the reasons noted above, PARC requests that Snap's Motion be denied in full.

McKool Smith, P.C.

1    DATED: February 26, 2021                Respectfully submitted,

2                                            MCKOOL SMITH, P.C.

3                                            BY  /s/ *David Sochia*
                                                  David Sochia
4

5                                            Alan P. Block (SBN 143783)
                                             ablock@mckoolsmith.com
6                                            McKool Smith Hennigan, P.C.
                                             300 South Grand Avenue, Suite 2900
7                                            Los Angeles, California 90071
                                             Telephone: (213) 694-1200
8                                            Facsimile: (213) 694-1234

9                                            David Sochia (TX SBN 00797470)
                                             (Pro Hac Vice)
10                                           dsochia@McKoolSmith.com
                                             Ashley N. Moore (TX SBN 24074748)
11                                           (Pro Hac Vice)
                                             amoore@McKoolSmith.com
12                                           Alexandra F. Easley (TX SBN 24099022)
                                             (Pro Hac Vice)
13                                           aeasley@McKoolSmith.com
                                             McKool Smith, P.C.
14                                           300 Crescent Court, Suite 500
                                             Dallas, Texas 75201
15                                           Telephone (214) 978-4000
                                             Facsimile: (214) 978-4044

16                                           James E. Quigley (TX SBN 24075810)
                                             (Pro Hac Vice)
17                                           jquigley@McKoolSmith.com
                                             McKool Smith, P.C.
18                                           300 W. 6th Street, Suite 700
                                             Austin,, Texas 7870
19                                           Telephone (512) 692-8700
                                             Facsimile: (512) 692-8744
20
                                             ATTORNEYS FOR PLAINTIFF
21                                           PALO ALTO RESEARCH CENTER INC.

22

23

24

25

26

27

28

McKool Smith, P.C.

26