# EXHIBIT L

<u>A/N 15/424,184</u>                                                                                                                    **PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Inventor(s): | Samir Ahmed et al. | Examiner: | SCOTT L. JARRETT |
| Application No.: | 15/424,184 | Group Art Unit: | 3623 |
| Filed: | February 3, 2017 | Docket No.: | 4218.410US1 |
| Confirmation No.: | 3703 | | |
| Title: | GEO-FENCE VALUATION SYSTEM | | |

## <u>AMENDMENT & RESPONSE UNDER 37 C.F.R. § 1.111</u>

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

      Applicant has received the Non-Final Office Action dated November 30, 2018. Please enter the following.

## IN THE TITLE

Please amend the title as follows:

SYSTEM TO DETERMINE A PRICE-SCHEDULE TO DISTRIBUTE MEDIA CONTENT

~~GEO-FENCE VALUATION SYSTEM~~

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111                                    Page 3
Application Number: 15/424,184                                                     Dkt: 4218.410US1
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

## IN THE CLAIMS

Please amend the claims as follows:

1. (Currently Amended) A computer-implemented method comprising:

receiving, at a server system, a media distribution request from a content distributor, the media distribution requesting including an identification of a location encompassed by a geo-fence; accessing, at the server system, usage data at a server system, the usage data collected from a set of client devices located within [[a]] the geo-fence that encompasses the location in response to the media distribution request that includes the identification of the location, the usage data comprising event identifiers that identify event categories includes location data that identifies a location encompassed by the geo-fence;

identifying an event category of the usage data based on the event identifiers, and a data type of the usage location data, the data type indicating a precision of the usage location data;

determining a geodensity of the event category within the geo-fence based on the usage data, the geodensity indicating a number of client devices that access media content related to the event category within the location encompassed by the geo-fence; [[and]]

augmenting, by one or more processors, the geodensity of the geo-fence based on the data type of the usage location data[[.]]; and

presenting a price schedule of the geo-fence to the content distributor, the price schedule based on the augmented geodensity of the event category.

2.-4. (Canceled)

5. (Original) The computer-implemented method of claim 1, wherein the data type of the location data includes Global Positioning Sensor (GPS) data, cellular data, and Wi-Fi data.

6. (Original) The computer-implemented method of claim 1, wherein the location data comprises multiple data types, and wherein the multiple data types include at least a first data type of a maximum precision, and a second data type of a minimum precision, and wherein the augmenting, by the one or more processors, the geodensity of the geo-fence based on the data type includes:

extracting a subset of usage data from the usage data, wherein the subset of usage data includes the second data type;

determining the geodensity of the geo-fence based on the usage data that includes the first data type.

7.    (Original)  The computer-implemented method of claim 1, wherein the location data comprises multiple data types, and wherein the multiple data types include at least a first data type of a maximum precision, and a second data type of a minimum precision, and wherein the augmenting, by the one or more processors, the geodensity of the geo-fence based on the data type includes:

extracting a subset of usage data from the usage data, wherein the subset of usage data includes the second data type;

splitting the subset of the usage data extracted from the usage data; and

determining the geodensity of the geo-fence based on the usage data that includes the first data type and the halved subset of the usage data.

8.    (Currently Amended)  A system comprising:

a memory; and

at least one hardware processor couple to the memory and comprising instructions that cause the system to perform operations comprising:

<u>receiving, at a server system, a media distribution request from a content distributor, the media distribution requesting including an identification of a location encompassed by a geo-fence;</u>

accessing<u>, at the server system,</u> usage data <s>at a server system, the usage data</s> collected from a set of client devices located within [[a]] <u>the</u> geo-fence <u>that encompasses the location in response to the media distribution request that includes the identification of the location</u>, the usage data <u>comprising event identifiers that identify event categories</u> <s>includes location data that identifies a location encompassed by the geo-fence</s>;

identifying <u>an event category of the usage data based on the event identifiers, and</u> a data type of the <u>usage</u> <s>location</s> data, the data type indicating a precision of the <u>usage</u> <s>location</s> data;

determining a geodensity of the <u>event category within the</u> geo-fence based on the usage data,

the geodensity indicating a number of client devices that access media content related to the event category within the location encompassed by the geo-fence; [[and]]

augmenting, by one or more processors, the geodensity of the geo-fence based on the data type of the ~~location~~ usage data[[.]]; and

presenting a price schedule of the geo-fence to the content distributor, the price schedule based on the augmented geodensity of the event category.

9.-11.   (Canceled)

12.   (Original)  The system of claim 8, wherein the data type of the location data includes Global Positioning Sensor (GPS) data, cellular data, and Wi-Fi data.

13.   (Original)  The system of claim 8, wherein the location data comprises multiple data types, and wherein the multiple data types include at least a first data type of a maximum precision, and a second data type of a minimum precision, and wherein the augmenting, by the one or more processors, the geodensity of the geo-fence based on the data type includes:

extracting a subset of usage data from the usage data, wherein the subset of usage data includes the second data type;

determining the geodensity of the geo-fence based on the usage data that includes the first data type.

14.   (Original)  The system of claim 8, wherein the location data comprises multiple data types, and wherein the multiple data types include at least a first data type of a maximum precision, and a second data type of a minimum precision, and wherein the augmenting, by the one or more processors, the geodensity of the geo-fence based on the data type includes:

extracting a subset of usage data from the usage data, wherein the subset of usage data includes the second data type;

halving the subset of the usage data extracted from the usage data; and

determining the geodensity of the geo-fence based on the usage data that includes the first data type and the halved subset of the usage data.

15.     (Currently Amended) A non-transitory machine-readable storage medium comprising instructions that, when executed by one or more processors of a machine, cause the machine to perform operations including:

receiving, at a server system, a media distribution request from a content distributor, the media distribution requesting including an identification of a location encompassed by a geo-fence;

accessing, at the server system, usage data at a server system, the usage data collected from a set of client devices located within [[a]] the geo-fence that encompasses the location in response to the media distribution request that includes the identification of the location, the usage data comprising event identifiers that identify event categories includes location data that identifies a location encompassed by the geo-fence;

identifying an event category of the usage data based on the event identifiers, and a data type of the usage location data, the data type indicating a precision of the usage location data;

determining a geodensity of the event category within the geo-fence based on the usage data, the geodensity indicating a number of client devices that access media content related to the event category within the location encompassed by the geo-fence; [[and]]

augmenting, by one or more processors, the geodensity of the geo-fence based on the data type of the usage location data[[.]]; and

presenting a price schedule of the geo-fence to the content distributor, the price schedule based on the augmented geodensity of the event category.

16.-18. (Canceled)

19.     (Original) The non-transitory machine-readable storage medium of claim 15, wherein the data type of the location data includes Global Positioning Sensor (GPS) data, cellular data, and Wi-Fi data.

20.     (Original) The non-transitory machine-readable storage medium of claim 15, wherein the location data comprises multiple data types, and wherein the multiple data types include at least a first data type of a maximum precision, and a second data type of a minimum precision, and

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111  
Application Number: 15/424,184  
Filing Date: February 3, 2017  
Title: GEO-FENCE VALUATION SYSTEM

Page 7  
Dkt: 4218.410US1

wherein the augmenting, by the one or more processors, the geodensity of the geo-fence based on the data type includes:

   extracting a subset of usage data from the usage data, wherein the subset of usage data includes the second data type;

   determining the geodensity of the geo-fence based on the usage data that includes the first data type.

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111  Page 8
Application Number: 15/424,184  Dkt: 4218.410US1
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

## REMARKS

This responds to the Non-Final Office Action dated November 30, 2018.

Claims 1, 8, and 15 are presently amended. Claims 2-4, 9-11, and 16-18 are presently canceled. No claims have been added. As a result, claims 1, 5-8, 12-15, and 19-20 remain pending in this application.

### *Interview Summary*

The undersigned would like to thank Examiner Scott L. Jarrett for the courtesy of a telephone interview on January 4, 2018.

Applicant appreciates the opportunity to review with the Examiner the background and salient aspects of the subject matter claimed in the application. The differences between the claimed subject matter and the cited art were reviewed. Applicant believes agreement was reached on the wording of an amended claim 1 as set out above, but Applicant appreciates the Examiner may need to conduct a further search.

If the present remarks do not result in allowance of all claims, the undersigned kindly requests that, before issuance of any further Office Action, a telephonic discussion be held between the Examiner and the undersigned, at the Examiner's convenience. The Examiner is requested kindly to call the undersigned at (408) 278-4043 to arrange a time for such telephonic interview.

-----------------------------------------------------------------

## *Drawing Rejections/Objections*

The Examiner has objected to FIG 10, asserting that the figure was incomplete or appears to have been cut off. Applicant respectfully requests reconsideration and withdrawal of the objection to FIG 10, as the figure appears to be complete, and is fully supported by the specification as originally filed. FIG 10 as filed is provided below for reference.



As seen above, FIG 10 depicts operations that include operation 1002, 1004, and 1006. Similarly, a review of the specification as originally filed provides detailed descriptions of each operation at paragraphs [0081]-[0085]. Applicant therefore respectfully requests withdrawal of the objection to FIG 10.

## *Specification Objections*

The Examiner asserts that the title of the invention is not descriptive, and that a new title is required that is clearly indicative of the invention to which the claims are directed.

In light of the Examiner's remarks, Applicant has amended the title for further clarification.

---

[1] Figure 10 as filed

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111
Application Number: 15/424,184
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

Page 10
Dkt: 4218.410US1

## *The Rejection of Claims Under §101*

Claims 1-20 stand rejected under 35 U.S.C. 101 as allegedly being directed to non-statutory subject matter. These rejections are respectfully traversed below.

### (1) The pending claims are directed to patent eligible subject-matter under DDR Holdings.

Applicant asserts that the claims here are directed to patent eligible subject matter for the reasons explained in *DDR Holdings*[2], where the Federal Circuit held that the claims were directed to patentable subject matter because they were necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer technology. Similarly, in the instant case, the claims are necessarily rooted in computer technology (e.g., determining a geodensity of a geo-fence based on usage data of devices located within the geo-fence, etc.) in order to overcome a problem specifically arising with computer technology (e.g., identifying relevant devices within a geo-fence, and accurately determining a number of devices within a geo-fence).

For example, as explained in the specification as originally filed, it is often challenging to determine an accurate number of devices located within a geo-fence, due to the inconsistency and inaccuracy of location data which is retrieved from the devices. For example, as seen in FIGs. 7A and 7B, various different types of location data may provide varying levels of precision, ranging from over 500m to under 50m. As a result, it is often difficult to know with certainty whether or not a device is actually located within a geo-fence or not. Content distributors utilizing geo-fences typically require that a user device is located within a particular geo-fence as a prerequisite to receiving access to content. If those distributors are unable to ascertain a devices location with sufficient precision, then there may be an over distribution of content, which can be undesirable. Thus, the problem addressed by the claimed invention is a technical one – some computing devices determine a number of devices in a given location based on location data received from a plurality of devices. If the location data is inaccurate, then the determination made by the computing device will likewise be inaccurate.

Embodiments as claimed address the above limitations, and provide a system which retrieves usage data associated with a plurality of client devices located within a geo-fence, wherein the usage data includes a set of event identifiers that identify event categories, and comprises a data

---

[2] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

type that indicates a precision level of the usage data, and which determines a geodensity of a particular event category within a geo-fence based on the usage data, and augments the geodensity based on the data type, in order to provide a more accurate geodensity value.

As explained above and in the specification, in traditional environments where a computing system is limited to location data to determine user density, there was no way to accurately count how many users in a particular geo-fence were within the geo-fence for a specific event or reason. For example, a geo-fence which encompassed a festival or concert may comprise a plurality of users that may attend the festival or concert for a variety of reasons, and those devices may or may not even be within the geo-fence itself, due to the inherent inaccuracies in the location data itself. The disclosed system seeks to solve this problem by collecting usage data from the devices within the geo-fence, wherein the usage data includes requests from the devices, and wherein those requests include identification of particular events and a data type. The system may then categorize and count user numbers based on requests in order to determine how many users within a particular geo-fenced area are there for a specific event, and augments the count based on the data type.

Also similar to *DDR Holdings*, the pending claims do not merely recite the performance of some business practice known from pre-Internet world along with some generic requirement to perform it using the Internet. Applicant submits that there is no "pre-computer" business practice directly analogous to the embodiments recited in the pending claims. As explained above, traditional environments do not have any need to collect usage data from a plurality of client devices within a geo-fence.

In addition, like the subject-matter eligible claims of *DDR Holdings*, the currently pending claims also do not preempt every application of some abstract idea, and instead provide a number of very specific limitations. Applicant submits that this is just one novel way of doing such a method and does not preempt every application of any abstract idea. Accordingly, like the claims in *DDR Holdings*, the claimed solution amounts to an inventive concept for resolving a computer technology-related problem, rendering the claims patent-eligible.

For at least these additional reasons, the rejections under 35 U.S.C. § 101 should be withdrawn.

**(2) The pending claims are directed to patent eligible subject-matter under Enfish.**

Furthermore, Applicant asserts that the claims here are directed to patent eligible subject matter for the reasons explained in *Enfish*[3], where the Federal Circuit held that the claims were not directed to an abstract idea because the claims were directed to a specific implementation of a solution to a problem in the software arts. Similarly, in the instant case, the claims are directed to a solution (e.g., determining a geodensity of a geo-fence based on usage data of devices within the geo-fence), to a problem in the software arts, as described in further detail above with respect to *DDR Holdings*.

In addition, the USPTO May 2016 Memorandum related to the *Enfish* decision[4] (hereinafter "USPTO *Enfish* Memorandum") explains that in *Enfish*, "the court noted that when determining whether a claim is directed to an abstract idea, it is appropriate to compare the claim to claims already found to be directed to an abstract idea in a previous court decision." As explained above, the Office Action does not compare the pending claims to claims already found to be directed to an abstract idea in a previous court decision.

For at least these additional reasons, the rejections under 35 U.S.C. § 101 should be withdrawn.

*The Rejection of Claims Under §112*

Claims 4, 11 and 18 stand rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.

Specifically, the Examiner asserts that the disclosure fails to provide a specific formula, equation, or algorithm related to a "weighted linear model," and does not "provide any discussion of the weights to be used in the weighted linear model for calculating a price schedule based on geodensity of the geofence as claimed."[5] Although Applicant believed the claims to be in condition for allowance, in light of the Examiner's remarks, Applicant has canceled claims 4, 11, and 18.

---

[3] *Enfish, LLC v. Microsoft Corp.*, 2016 WL 2756255 (Fed. Cir. 2016).
[4] USPTO May 19, 2016 Memorandum "Recent Subject Matter Eligibility Decisions (*Enfish, LLC v. Microsoft Corp. and TLI Communications LLC v. A.V. Automotive, LLC*), at page 1, available at http://www.uspto.gov/sites/default/files/documents/ieg-may-2016_enfish_memo.pdf, last visited on August 2, 2016.
[5] Office Action pg. 10

Applicant therefore respectfully requests withdrawal of the rejection of claims 4, 11, and 18, and submits that the claims are now in condition for allowance.

### *The Rejection of Claims Under §103*

Claims 1, 5, 8, 12 and 19 stand rejected under 35 U.S.C. 103(a) over Krishnareddy (U.S. 2013/0006777) in view of Wuersch et al. (U.S. 2014/0156410).

A determination of obviousness requires a factual showing that "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[6] The question of obviousness is resolved on the basis of underlying factual determinations including (1) "the scope and content of the prior art," (2) "differences between the claimed subject matter and the prior art," (3) "the level of ordinary skill in the art," and (4) where in evidence, "secondary considerations."[7] Here, no determination of obviousness is properly established for at least the reason that the scope and content of the cited references, even if combined, do not teach or suggest all claimed elements or support rational inferences that one skilled in the art reasonably would be expected to draw to reach all claimed elements.

In the Office Action dated November 30, 2018, the Examiner failed to address limitations previously recited by dependent claims 2, 3, and 4. Although Applicant believed the claims to be in condition for allowance, Applicant has nonetheless amended the independent claims for further clarification, to include limitations previously recited by dependent claims 2, 3, and 4, that include, in relevant part,

> *receiving, at a server system, a media distribution request from a content distributor, the media distribution requesting including an identification of a location encompassed by a geo-fence;*
>
> *accessing, at the server system, usage data collected from a set of client devices located within the geo-fence that encompasses the location in response to the media distribution request that includes the identification of the location, the usage data comprising event identifiers that identify event categories;*

---

[6] *Graham v. John Deere*, 383 U.S. 1, 17; 148 U.S.P.Q. 459, 467 (1966).
[7] *Graham v. John Deere*, 383 U.S. 1, 17-18, 148 U.S.P.Q. 459, 467; *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406-7, 82 U.S.P.Q.2d 1385, 1390 (2007), cited in *Ex parte Frye*, Appeal No. 2009-006013 (BPAI 2010) (precedential).

*identifying an event category of the usage data based on the event identifiers, and a data type of the usage data, the data type indicating a precision of the usage data;*

*determining a geodensity of the event category within the geo-fence based on the usage data, the geodensity indicating a number of client devices that access media content related to the event category within the location encompassed by the geo-fence;*

*augmenting, by one or more processors, the geodensity of the geo-fence based on the data type of the usage data; and*

*presenting a price schedule of the geo-fence to the content distributor, the price schedule based on the augmented geodensity of the event category.*

Support for the amendments can be found in dependent claims 2, 3, and 4 as previously presented, as well in the specification as originally filed at paragraphs [0070]-[0073], and [0080]-[0085], and FIGs 7A and 7B. Applicant respectfully submits that the cited references to Krishnareddy and Wuersch, either alone or in combination, fail to teach or suggest such limitations.

The Examiner asserts that various portions of Krishnareddy teach or suggest limitations that include, "accessing usage data at a server system," as previously recited by independent claim 1.[8] These limitations have been amended for further clarification to recite, "accessing usage data collected from a set of client devices located within geo-fence that encompasses the location in response to the media distribution request that includes the identification of the location, the usage data comprising event identifiers that identify event categories." Krishnareddy does not disclose such limitations.

For example, Krishnareddy describes "a computer-implemented method for monetizing future location of users," that includes "identifying indicator(s) retrieved from log data or an electronic declaration that indicate a possibility that a user will be at a specific location in the future," and "generating a probability that the user will be at the specific location in the future based on the indicator(s); and charging an advertiser a cost for an impression to which to serve a location-specific advertisement targeted to the user, the cost charged being greater when the probability is greater that the user will be at the specific location in the future."[9] Relevant portions of Krishnareddy provide, in relevant part,

---

[8] Office Action pg. 12
[9] Krishnareddy at Abstract

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111  Page 15
Application Number: 15/424,184  Dkt: 4218.410US1
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

> *[0032] The method, at block 300, includes identifying one or more indicators retrieved from log data or an electronic declaration that indicate a possibility that a user will be at a specific location in the future. The method, at block 310, includes generating a probability that the user will be at the specific location in the future based on the one or more indicators. The method, at block 320, charges an advertiser a cost for an impression to which to serve a location-specific advertisement targeted to the user, the cost charged being greater when the probability is greater that the user will be at the specific location in the future. The method, at block 330, may also include setting the cost even higher if the probability that the user will be at the specific location at a specific point in time in the near future is also high.[10]*

Krishnareddy therefore describes a system which generates a probability that a user will be at a specific location based on a set of "indicators," and which charges an advertiser a cost for an impression based on the probability. Krishnareddy does not however describe a system which performs operations that include receiving a request from a content distributor, wherein the request includes an identification of a location, and which accesses usage data associated with the location in response to the request, wherein the usage data comprises event identifiers that identify event categories. For at least this reason, Applicant respectfully submits that Krishnareddy does not teach or suggest limitations that include, "receiving a media distribution request from a content distributor, the media distribution requesting including an identification of a location encompassed by a geo-fence," and "accessing usage data collected from a set of client devices located within geo-fence that encompasses the location in response to the media distribution request that includes the identification of the location, the usage data comprising event identifiers that identify event categories." Wuersch likewise fails to address such limitations, and therefore fails to overcome the deficiencies of Krishnareddy discussed above.

Applicant therefore respectfully submits that claim 1 is allowable. Further, in light of the remarks above, Applicants submit that independent claims 8 and 15 are also allowable. Dependent claims 5-7, 12-14, and 19-20 are allowable at least by virtue of their dependence upon claims 1, 8, or 15. Moreover, the dependent claims are each patentable based on elements recited therein. Thus, it is respectfully requested that these rejections be reconsidered and withdrawn and that the claims be allowed.

---

[10] *Id.*[0032]

**AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111**     **Page 16**
Application Number: 15/424,184     Dkt: 4218.410US1
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

Therefore, in view of the foregoing remarks, Applicant respectfully requests reconsideration and withdrawal of the 35 U.S.C. § 103(a) rejection of claims 1, 5-8, 12-15, and 19-20.

AMENDMENT AND RESPONSE UNDER 37 C.F.R. § 1.111  Page 17
Application Number: 15/424,184  Dkt: 4218.410US1
Filing Date: February 3, 2017
Title: GEO-FENCE VALUATION SYSTEM

## CONCLUSION

It is respectfully submitted that the claims are in condition for allowance, and notification to that effect is earnestly requested. The Examiner is invited to telephone the undersigned at (408) 278-4043 to facilitate prosecution of this application.

If necessary, please charge any additional fees or deficiencies, or credit any overpayments to Deposit Account No. 19-0743.

Respectfully submitted,

SCHWEGMAN LUNDBERG & WOESSNER, P.A.
P.O. Box 2938
Minneapolis, MN 55402-0938
(408) 278-4043

Date  January 4, 2019        By  / Aris Gregorian /

Aris Gregorian
Reg. No. 72,357