YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
DAVID OKANO (SB# 278485)
davidokano@paulhastings.com
BRUCE YEN (SB# 277920)
bruceyen@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

STEVEN A. MARENBERG (SB# 101033)
stevenmarenberg@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, Suite 2700
Los Angeles, California 90067
Telephone: 1(310) 620-5710
Facsimile: 1(310) 620-5270

Attorneys for Defendant
SNAP INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., <br><br> Plaintiff, <br><br> vs. <br><br> SNAP INC., <br><br> Defendant. | CASE NO. 2:20-cv-10755-AB-MRW <br><br> **REPLY IN SUPPORT OF SNAP INC.'S RULE 12(B)(6) MOTION TO DISMISS UNDER** <br><br> DATE: March 19, 2021 <br> TIME: 10:00 AM <br> COURTROOM: 7B <br> JUDGE: Hon. André Birotte Jr. |

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................... 1

    A.    PARC does not argue the eligibility of any particular claim or identify a specific construction for any term that would affect the outcome of Snap's motion. ........................................................... 1

    B.    The '362 patent claims are patent-ineligible under § 101. ................... 1

        1.    At *Alice* step one, the foundation of PARC's opposition is untethered from the claims. ...................................................... 1

        2.    At *Alice* step two, PARC provides no specific identification of an inventive concept that is recited by the claims. ................................................................................................ 6

    C.    The '439 patent claims are patent-ineligible under § 101. ................... 7

        1.    At *Alice* step one, the context graph is not an improvement to computer functionality. ................................. 7

        2.    The "context graph" adds no inventive concept. ......................... 9

    D.    The '599 patent claims are patent-ineligible under § 101. ................. 10

        1.    The claims do not recite improvements to mobile devices. ..... 10

        2.    The '599 patent claims do not recite an inventive concept. ..... 13

    E.    Snap's prosecution of unrelated patents is not relevant...................... 14

    F.    Snap met and conferred in good faith. ................................................ 14

    G.    The Court should grant dismissal with prejudice. ............................. 15

III. CONCLUSION ............................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................... 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
   573 U.S. 208 (2014) .................................................................................... 6

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ................................................................... 9

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
   94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...................................................... 15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ..................................................................... 2

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018) ................................................................... 12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ................................................................... 5

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020) ....................................................... 1, 10, 14

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................ 4, 14

*Ericsson Inc. v. TCL Comm'cn Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) .............................................................. 5, 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ............................................................. 7, 10

*Intellectual Ventures I v. Capital One Bank (USA), N.A.*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................ 11, 13

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) ......................................................... 6, 7, 11

*Philips NA v. Garmin Int'l et al.*,
   Case No. 2:19-cv-06301-AB-KS (C.D. Cal. Feb. 25, 2021) .................... 15

*SAP Am., Inc. v. InvestPic, LLC*,
   889 F.3d 1161 (Fed. Cir., 2018) ...................................................... 7, 10, 13

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ........................................................ 8, 14, 15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) ................................................................. 1, 10, 13

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ..................................................................... 12, 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ....................................................................... 2, 14

**Statutes**

35 U.S.C. § 102 .............................................................................................................. 8, 10

35 U.S.C. § 103 .............................................................................................................. 8, 10

## I. INTRODUCTION

The Federal Circuit has made clear that the § 101 inquiry "must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). PARC's opposition focuses elsewhere—the specification, the prosecution history, its complaints about the content discussed during the parties' meet-and-confers. PARC's notable failure to quote the claims—much less tie them to the features it contends they contain, alone signals a weakness PARC's attorney argument cannot cure, on Rule 12 or otherwise.

## II. ARGUMENT

### A. PARC does not argue the eligibility of any particular claim or identify a specific construction for any term that would affect the outcome of Snap's motion.

To begin, one result of PARC's focus on the specification and file history instead of the claims is that PARC does not argue for the eligibility of any claim separately from the independent claims of U.S. Patent Nos. 8,966,362, 9,208,439, or 8,489,599 (the '362, '439, and '599 patents) identified in Snap's motion as representative—whether at *Alice* step one or step two. *See* Mot. at 4:4–14, 8 n.3, 10:6–14 ('362 patent), 11:2–9, 15 n.5 ('439 patent), 18:2–17, 24 n.6 ('599 patent). Nor does PARC identify a construction for any term that it believes would affect the § 101 analysis. Its conclusory statements that this motion cannot be resolved without claim construction (e.g., Opp. 19:3–8) are contrary to law. *See, e.g.*, *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183–84 (Fed. Cir. 2020) (rejecting conclusory allegations district court should have engaged in claim construction before deciding motion on the pleadings where patentee did not explain how "construction could affect the [§ 101] analysis").

### B. The '362 patent claims are patent-ineligible under § 101.

#### 1. At *Alice* step one, the foundation of PARC's opposition is untethered from the claims.

At *Alice* step one, PARC's opposition focuses on two primary defenses: (1) the claimed "inline tag" provides the "how" and "a specific solution" that improved

the prior art (Opp. at 22:19–21, 23:7–10), and (2) Snap's analogy is inapplicable because the "claimed 'dissemination' of the tagged document controls the amount of information shared and the actions the recipient can take" (Opp. at 20:24–26). But to support these arguments, PARC relies on strategic paraphrasing of the claims and importing details from the specification that are not required by the actual claim language. Indeed, PARC's opposition to Snap's analysis of the '362 patent's claims begins with a plea to "first consult the specification," (*id*. at 19:15–17), contrary to basic tenets of the § 101 inquiry. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("[A]ny reliance on the specification in the § 101 analysis must always yield to the claim language").[1]

    PARC's criticism of Snap's analogy and detailed explanation of how the claims recite the automation of the manual process of marking up a document with follow-up actions for a recipient further highlights the patent's focus: processing and manipulating information. For example, the features PARC contends are in the claims all involve the processing and manipulating of collected information: "tags that control the amount of information shared with the recipient," Opp. at 22:1–2; information collected through "the format and content of the tag," *id*. at 22:19–21; information to be processed using tag that "identifies the portion of the document to be disseminated," *id*. at 23:7–8. Even if these functions were recited by the claims (they are not, as explained below), they are all part of the "directed to" abstract idea—collecting, processing, and manipulating information in a particular environment of text-based tags, Mot. at 7:7–19, an inconvenient fact for which PARC *has no answer*.

        a.    The claimed "tag" is not a specific technological solution that preserves context of the original document.

The crux of PARC's opposition is that "the claimed inline tag, which identifies

---

[1] To the extent PARC suggests that the specification can alter the analysis over what is recited in the claims, PARC is incorrect. *See, e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017) ("The main problem [patentee] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing an inventive concept.").

the portion of the document to be disseminated along with actions to be taken, is a specific solution that improves the prior art's requirement to provide the whole document or manually clip out relevant portions while losing invaluable context." Opp. at 23:7–10; *id.* at 22:1–3 ("computer-specific solution" is "tags that control the amount of information shared with the recipient, and the actions he/she can take"). But these notions of context-identification and control are not recited in the claims.

The "tag" itself is no more than abstract information: "[t]he term 'tag' refers to a piece of descriptive text which can be inserted in a document." '362 patent, 4:24–25. Nothing in the claims demonstrates *how* the inline tag maintains context by sending portions of the document different from "manually clip[ping] out relevant portions," Opp. at 23:9–10. The claims recite only the *result* of "processing the one or more tags according to one or more rules to determine [an] action to be performed on [a] partial portion of the document." '362 patent, 12:24–26, not how to maintain context while doing so. Indeed, the specification makes clear "a document portion can be *any* subset of a document, including, but not limited to, one or more sentences, paragraphs, sections, graphs, audio or video clips, *or an arbitrary combination of text* and/or other forms of media." *Id.* at 4:5–10.[2] Far from a specific way to maintain "invaluable context," the claims recite no more than use of a tag to identify parts of a document—a different problem and irrelevant to how to maintain context.

The irrelevance of the tag to the problem of maintaining context is cemented by dependent claim 2, which recites "The method of claim 1, wherein the tag also indicates the portion of the document." *Id.* at 12:32–33. That a dependent claim is required to even "indicate[]" the "portion" of the document to "disseminat[e]," highlights the lack of a specific technological solution in the claims. But whether an arbitrary "partial portion" (claim 1) or a portion that is "indicated" (claim 2), neither recites an improvement in computer technology—PARC's failed effort to link a "tag" to context still results in nothing more than the abstract processing of information.

---

[2] Unless otherwise indicated, all emphases added.

       b.  The claimed "tag" is not a specific technological solution that controls the actions of other users on the document.

For notions of "control," PARC contends that the recited "disseminating" "controls the amount of information shared and the actions the recipient can take." Opp. at 20:25–26. PARC, however, cites to the *specification*, not the claims. *Id.* (citing specification at 4:13–19). And it must. The *claims* recite only that the tag "indicates an action to be performed on a partial portion of the document." '362 patent, 12:21–22 (claim 1). Far from "control[ling] the amount of information shared," as PARC suggests, the claims do not even require identifying a specific "partial portion" of the document to be shared, as shown by claim 2 discussed above (and claim 2 provides no explanation of how to "control" a user's actions). Further, the specification cite by PARC defines "[t]he term 'disseminate' or 'dissemination' [to] refer[] to the operation of sending ***a document or a portion thereof*** to a receiving entity." *Id.* at 4:13–15. In short, absent further limitation by the claims, "disseminating" does not require the level of control asserted by PARC, but encompasses basic functionality of sending part of a document to someone.

In addition, PARC's notion of "control" is a brazen substitute for what the claims actually recite: "facilitate." Far from "control," the claims recite that the tags only "*facilitate* performing [an] action," as illustrated by "Show Paragraph to Jeffrey" in the specification. *Id.* at 12:28–31. As admitted by PARC itself (Opp. at 20:9–12), the result of processing and manipulating information provided by a tag can include **no action** at all by the receiving entity. The claimed method does no more than increase "the *likelihood* that the recipient will be to respond in a timely fashion" and "the *likelihood* that the response will be more focused on the issues of concern." '362 patent, 3:27–31. Moreover, this identification of "actions to be taken" (Opp. at 23:7–8) is no more than the presentation of processed information, a mental process repeatedly found to provide no technological improvement at *Alice* step one. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

      c.  PARC misapprehends the relevance of the computer-specific context in the § 101 inquiry.

PARC contends that because the claims involve an admitted conventional electronic document system (e.g., Microsoft Word), they are "necessarily rooted in computer technology" and therefore patent-eligible, as in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). But limiting claims to the environment of electronic word processing does not alter the § 101 analysis.

First, *DDR* cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258. The *DDR* claims were eligible because they recited what the '362 patent claims do not: they "specif[ied] *how* interactions with the Internet are manipulated to yield a desired result" using the specific solution of sending website visitors who clicked on a third-party advertiser website to a *different* "outsource provider" website which provided "an automatically-generated hybrid web page that combine[d] visual 'look and feel' elements from the host website and product information from the third-party merchant's website"—a specific solution that was far from "broadly and generically" claiming the performance of the desired result. *Id.* at 1257–58.

Second, the Federal Circuit has repeatedly explained that limiting the claims to a particular technological environment involving computers does not save claims that fail to provide the needed specificity. *See, e.g.*, *Ericsson Inc. v. TCL Comm'cn Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) ("But 'limit[ing] the abstract idea to a particular environment—a mobile telephone system—[ ] does not make the claims any less abstract for the step 1 analysis.'" (citations omitted)).

In sum, PARC's opposition cements the lack of a technological improvement to computer functionality in the claims. Despite asserting "[t]he 'how' that Snap complains is missing from the '362 is right there in the text of the claims," Opp. at 20:2–3, PARC proceeds to paraphrase the claims without linking its paraphrases to the claim language itself (*id.* at 20:3–7 (no specific cites to claim limitations)), then

shifts away from the claims and imports details from the specification (*id.* at 20:7–18 (citing only to specification at 3:15–21, 3:27–31, and 4:19–24)). PARC has no answer for Snap's observations that "[t]here is no detail on *how* the inline natural language tags are processed such that they might be distinguished from other natural language in the document, only that they are" and "[t]here is no detail on *how* the system interprets the tags in the document and uses rules to determine both the action and the recipient, only that this result is achieved." Mot. at 6:20–26. PARC's retort repeats a result without any explanation of *how* the tags are processed and interpreted to determine a recipient and desired action: "The invention then processes the tags and disseminates the portion indicated to the receiving entity to facilitate the action specified." Opp. at 20:6–7. Far from responding to Snap's contention, PARC's opposition further highlights that the claims do no more than automate manual processes using unspecified computer functionality.

### 2. At *Alice* step two, PARC provides no specific identification of an inventive concept that is recited by the claims.

Rather than explaining what in the claims—either individually or as a whole—provides "significantly more than a patent upon the [ineligible concept] itself," *Alice*, 573 U.S. at 218, PARC's opposition focuses on what the specification, complaint, and file history says was the problem in the prior art, without identifying what *in the claims* provides the solution to that problem. *See* Opp. at 23:27–24:3 ("specification notes the *problem* associated with conventional document editing systems"), 24:3 ("Complaint reiterates these concerns"), 24:3–10 ("[p]rosecution history" states that "prior art 'does not disclose a tag that indicates an action to be performed'").

Absent from PARC's opposition is a particular solution for *how* the claims overcome the problem. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) (no inventive concept where patent "purport[ed] to describe an improved user experience," but patent and claims "wholly devoid of details which describe *how* this is accomplished"). PARC's only reference to the actual claims is a

paraphrase of its contentions with respect to *Alice* step one, Opp. at 24:1–3, and which is untethered from the claim language, as detailed above. The high-level, result-focused solution identified is "described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem . . . ." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016). Nor are the results-focused, generic limitations as an ordered combination of elements the type the Federal Circuit has found to provide an inventive concept. *See Interval Licensing*, 896 F.3d at 1347 ("conventional" limitations, "recited at a high level of generality. . . are not the kinds of limitations we have held to 'solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner.'").

### C. The '439 patent claims are patent-ineligible under § 101.
#### 1. At *Alice* step one, the context graph is not an improvement to computer functionality.

PARC's contention the '439 patent is patent eligible rests on its characterization of the recited "context graph" as improving computer functionality. Opp. at 16:11–26. PARC supports its contention by importing details from the specification, details that are not required by the claims, and details that PARC makes no attempt to even tie to the claims. *See id.* (citing only '439 patent, 6:59–7:52, which describes "one embodiment," 7:24, and 2:49–55, again describing "embodiments").

To begin, PARC sprinkles its *Alice* step one arguments with suggestions the "context graph" is "unconventional." But whether the "context graph" was new, unconventional, or nonobvious, has **no** relevance to the step one analysis. *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016), ("'[N]ovelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); *SAP Am., Inc. v. InvestPic, LLC*, 889 F.3d 1161, 1162 (Fed. Cir., 2018) ("Nor is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art,

passing muster under 35 U.S.C. §§ 102 and 103.").

As to the proper inquiry, the specification confirms the recited "context graph" provides no improvement in computer functionality. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (software claims can be eligible if "directed to non-abstract improvements to the functionality of a computer . . . itself"). The '439 patent treats "context graph" as a generic database that stores information about a user. '439 patent at 3:20-23 ("A context graph is an in-memory model that stores facts and assertions about a user's behavior and interests"), 5:31-35 ("context graph stores generic user model information"), 7:28-29 ("Context graph 406 is a database of information about the user").

PARC seeks to tie the "context graph" to an improvement to mobile devices. *See* Opp. at 17:7–9 ("The '439 invention is 'targeted at achieving a specific improvement in computer technology,' namely mobile devices."). But the claims do not require the context graph to reside on a mobile device; multiple embodiments place it on a server. *See* '439 patent, 3:18–22; 7:34–35, Fig. 4, element 406). The only role of mobile devices in the *claims* is collecting data. *Id.* at 10:31–33.

PARC also alleges the "context graph" "improves the way data is stored and used." Opp. at 16:11–13. But PARC does not identify *how the claims* provide this improvement. Nor could it. The specification makes clear the "context graph" performs the function of storing data without any detail of how it accomplishes this. *See* '439 patent. 7:38–39 ("Context graph 406 may store data according to different data models"). And the claims recite the function of modifying stored data without any particularity. *Id.* at 10:34–36 ("modifying a context graph that stores facts and assertions about a user's behavior and interests using the event data").

The problem addressed by the patent also undermines PARC's contention: the patent's goal is not to provide a specific technological solution, but rather provide a "**generic** contextual intelligence platform that may be adapted for specific applications" ***by others***. *Id.* at 2:49–52. And even if PARC were correct, such

improvements in the quality and organization of information do not render the claims patent eligible, as these are not improvements in *database* functionality. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287–88 (Fed. Cir. 2018) ("improve[ments in] the quality of information added to the database and the organization of information in the database . . . are not improvements to database functionality," but rather "benefits that flow from performing an abstract idea in conjunction with a well-known database structure").

Beyond its conclusory assertions, PARC offers no argument to dispute that the '439 patent *claims* are directed to **collecting information** ("receiving, from a mobile device, event data derived from contextual data collected using detectors that detect a physical context," '439 patent, 11:4–6), **processing information** ("modifying a context graph that stores [information])" and **sending information** ("sending a notification of context graph change to a recommender" *id.* at 11:7–12). Instead, PARC's opposition highlights that the *claims* provide nothing beyond the performance of these abstract functions in a results-oriented manner.

### 2.   The "context graph" adds no inventive concept.

PARC contends the "context graph" is unconventional, but as detailed above, PARC's contention is contradicted by the specification. Moreover, as explained in *BSG Tech*, 899 F.3d at 1290, a contention "the asserted claims recite unconventional features that provide benefits over conventional prior art databases" is not enough. Rather, "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but whether there is something "sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the [ineligible concept] itself." *Id.* And as shown in Snap's Motion, the recited "context graph" provides nothing more than a generic technological environment to carry out the abstract idea. This is not sufficient to provide an inventive concept. *Id.*

PARC's contention that the "the prior art does not disclose the claimed context graph or a notification of a change being sent to a recommender" is irrelevant as a

1 matter of law. *See e.g.*, *Synopsis*, 839 F.3d at 1151 ("equat[ing] the inventive concept inquiry with novelty" and contending claims "contain an inventive concept because they were not shown to have been anticipated by (35 U.S.C. § 102) or obvious over (35 U.S.C. § 103) the prior art" is a "position [that] misstates the law"; "a claim for a new abstract idea is still an abstract idea."); *IV/Symantec*, 838 F.3d at 1315 ("While the claims may not have been anticipated or obvious because the prior art did not disclose [key limitations,] that does not suggest that the [focus of the claims] is not abstract, much less that its implementation is not routine and conventional"). So too is PARC's plea to look to the prosecution history. *See Elec. Commc'n*, 958 F.3d at 1183 ("specific details relating to the procedure of prosecution before the USPTO bear no relationship to the subject matter to which [a claim] is directed," and nor does "diligence and good faith during patent prosecution before the USPTO in any way shield the patent's claims from Article III review for patent eligibility").[3]

### D. The '599 patent claims are patent-ineligible under § 101.

#### 1. The claims do not recite improvements to mobile devices.

PARC's defense of the '599 patent is also untethered from the claims. Front and center is PARC's assertion that "[t]he '599 patent thus advances the state of mobile devices by enabling them to account for their users' activities." Opp. 8:15–16; *id.* at 9:8–9, 9:22 ("the '599 claims are directed to improving a basic function of mobile devices"; "the '599 solution improved mobile device functionality"). But ***none*** of the independent claims recite a mobile device. And claim 1 does not recite a computing device—much less a mobile device—at all. '599 patent, 23:20–41.

PARC contends the '599 claims address a "mobile device-specific problem for being unable to learn and understand users' behavior" by "teaching new techniques for considering mobile-device specific information to make presentation decisions,"

---

[3] PARC's claim of a dispute as to the "context graph" being inventive is meritless. "We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP*, 898 F.3d at 1163.

1  Opp. at 10:6–7, but does not identify anything *in the claims* reciting these "new
2  techniques." PARC also contends the claims "are directed to a specific technique for
3  using mobile device detector information to create a better mobile device
4  experience," *id.* at 11:3–5, and that the claims are "detailed and specific," Opp. at
5  10:10–11, but then supports this assertion with attorney argument without citation to
6  a claim. *Id*. at 10:11–13. Nowhere does PARC identify anything in the claims reciting
7  *how* the claimed user "contextual information" and "context" provide "mobile-device
8  specific information." *Id.* at 7:28–8:2 ("system works" by "receiving" and
9  "processing" contextual information to "determine a context"). And nowhere does
10 PARC identify anything in the claims as to *how* the system uses user "context" to
11 trigger the presentation of "content." *Id.* at 8:9–12 ("triggers can cause different
12 contexts to drive the presentation of different content").

13       PARC's apparent paraphrasing of the claims *emphasizes* their functional
14 results without any particular way of achieving those results: information is "received
15 and processed," context "determined," and information "presented" if a trigger
16 condition "is met." *Id.* Where claims recite "the production of a desired result . . .
17 without any limitation on **how** to produce that result," they "encompass[] a patent-
18 ineligible abstract concept rather than an arguably technical improvement to display
19 devices." *Interval Licensing*, 896 F.3d at 1345.

20       PARC's effort to distinguish the cases cited in Snap's Motion is unpersuasive.
21 In its Motion, Snap compared the '599 patent claims (which recite presenting
22 "content" based on satisfaction of a "trigger" specifying a user "context" that is
23 determined from user "contextual information") to claims directed to tailoring
24 information to users based on information known about the user found ineligible in
25 cases like *Intellectual Ventures I v. Capital One Bank (USA), N.A.*, 792 F.3d 1363,
26 1369 (Fed. Cir. 2015). Mot. at 19–22. PARC's response is a conclusory assertion that
27 the '599 claims recite a "computer-related solution" to a "computer-related problem."
28 Opp. at 10:26–11:2. But as described above in section II.B.1.c, it is claims reciting a

particular solution—not claims involving a particular technological environment—that can clear the step one threshold. *See, e.g., Ericsson*, 955 F.3d at 1327. PARC also makes the misguided attempt to distinguish the many similar cases on the ground that content tailoring was based on time of day and/or user location, Opp. at 11:2–8, overlooking that the '599 patent also explains that presentation of context-based content presentation can be based on time of day and/or user location. '599 patent, at 4:12–16 ("content management system can sense motion, location, and time of day, then the user can define a context for walking from one location to another at a particular time of day"), 6:26–35 (same), 8:39–47 ("content management system 100 can be programmed to present content in response to. . .receiving reminders (e.g., errands, purchases) at the right time and while in the right place").

PARC cites to *Data Engine* and *TecSec* but to no avail. Opp. at 9:3–23. In fact, *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) highlights the flaw in the '599 patent's claims. In *Data Engine*, representative claims of two patents with a shared specification received different fates: one was found eligible and the other was not. The representative claim found eligible recited a "specific method for navigating through three-dimensional electronic spreadsheets" in the form of "a specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers"—three-dimensional "notebook tabs." *Id.* at 1008–09. In contrast, the representative claim found ineligible "d[id] not recite the specific implementation of a notebook tab interface" and instead recited only the *function* of "associating each of the cell matrices with a user-settable page identifier." Id. at 1012. Like the ineligible claim in Data Engine, the '599 patent recites no specific implementation of a solution, but rather the desired solution itself, a defect highlighted by PARC's opposition.

In *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020), the claims recited an "object-oriented key manager," which the Federal Circuit had construed to require a software component that managed encryption using cryptographic keys, as

well as a particular labelling requirement, both to aid in a multilevel network security process. This particular solution allowed the claims to improve "a basic function of a computer data-distribution network, namely, network security." *Id.* at 1296. Unlike the *TecSec* claims, the '599 patent claims do not "identify[] a 'specific' improvement in computer capabilities or network functionality," and instead are similar to claims found abstract as "only claiming a desirable result or function." *Id.* at 1293.

### 2. The '599 patent claims do not recite an inventive concept.

At *Alice* step two, PARC relies on the file history and applicant statements that various limitations were not present in prior art references. Opp. at 12:22–14:7. As explained in section II.C.2, that the claims were novel or nonobvious is irrelevant to the § 101 inquiry as a matter of law. *See, e.g.*, *Synopsis*, 839 F.3d at 1151. Indeed, "[w]e may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP*, 898 F.3d at 1163.

PARC's cites to *Cellspin*, *BASCOM*, and *Amdocs* to contend that claims reciting "generic" or "well known" components may still be found eligible at step two, is a seeming tacit admission that the components recited by the '599 patent's claims are all similarly generic or conventional. *See* Opp. at 12:13–21. Unlike these cases, the '599 patent's claims are missing—and PARC's opposition does not identify—the key aspect that provided an inventive concept: the *claims* recited generic components in an unconventional manner.

In contrast, the '599 patent claims use a conventional ordering of steps: receiving information about the context of a user, processing that information to determine whether the context satisfies a condition, and presenting content to the user if it has. Mot. at 21:14–26. Indeed, this is the same conventional ordering of content tailoring steps that was determined to lack an inventive concept *as a matter of law* in *IV/CapOneBank*, 792 F.3d at 1370–71 (claims reciting "a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer . . . do nothing more than spell out what it means to 'apply it on a

computer'" under *Alice*) and *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept where claims used "a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception").

PARC also contends Snap "ignores that critical claim elements, including 'contextual information,' 'trigger condition,' and 'context,' all relate to the inventive nature of the claims[.]" Opp. at 13:12–14. But "[i]nformation as such is an intangible." *Elec. Power*, 830 F.3d at 1353. And PARC provides no explanation of *how* this information provides an inventive concept. The Federal Circuit has repeatedly instructed that "the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis" into an inventive concept. *Id.* at 1355. To the extent PARC contends a claim construction dispute necessitates denial of Snap's motion, PARC is mistaken. *See Simio*, 983 F.3d at 1365 (no error in resolving Rule 12 motion where plaintiff "has not explained *how* it might benefit from any particular term's construction under an Alice § 101 analysis"); *Elec. Commc'n*, 958 F.3d at 1183–84 (same).

### E. Snap's prosecution of unrelated patents is not relevant.

PARC also complains that Snap has purportedly made contrary statements during prosecution of its own patents. This argument underscores the consistent legal flaw throughout PARC's opposition: arguments Snap has made during prosecution of patents with different claims are not relevant to the claims at issue here.

### F. Snap met and conferred in good faith.

Snap complied with L.R. 7-3. Contrary to PARC's assertions, in its January 12 letter Snap specifically indicated that the claims in the Complaint were directed to abstract ideas of "gathering, analyzing, and displaying information," invoked "'generic computer implementation' with 'purely functional' recitations," and added nothing "'significantly more' than the abstract idea." Dkt. 31-3. PARC criticizes that Snap did not name the patents it believed were ineligible, but Snap's letter identified all of PARC's asserted patents as invalid, and has so moved for dismissal in this

1  Motion. The parties then met and conferred during which Defendants affirmed the
2  positions in their letters, while PARC provided some limited positions and indicated
3  it would not amend its complaint; the parties confirmed an impasse. Dkt. 31-4. PARC
4  followed-up in writing, in which it provided broad statements of § 101 law, and stated
5  that it "look[ed] forward to seeing [defendants'] responses in early February." Dkt.
6  31-5. Snap twice invited PARC to further discuss their positions to no avail. Dkt. 31-
7  8. PARC's assertion that Snap failed to meet and confer in good faith is without merit.

But even were L.R. 7-3 not satisfied (not the case here), that does not mandate automatic denial where "the non-moving party has suffered no apparent prejudice." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (citation omitted); *see Philips NA v. Garmin Int'l et al.*, Case No. 2:19-cv-06301-AB-KS (C.D. Cal. Feb. 25, 2021) (ruling on motion, despite violation). PARC does not allege any prejudice. Given its Rule 11 investigation, PARC knew or should have known its patents would be §101 vulnerable. The parties properly met and conferred, and there is no basis to deny the instant motion upon such grounds.

### G. The Court should grant dismissal with prejudice.

Even after having met and conferred and now having all of defendants' briefs in hand, PARC has still not indicated with what information it would amend nor has it explained why such amendment would not be futile, particularly because the patents themselves are dispositive. Nor has it identified a specific construction for any term that would affect the outcome of Snap's motion. As such, denial of amendment for futility is appropriate. *See Simio*, 983 F.3d at 1364-65 (affirming futility-based denial where complainant's proposed amendments did not prevent resolving the eligibility question as a matter of law, and complainant did not explain how it might benefit from any particular term's construction under an § 101 analysis).

## III. CONCLUSION

For the foregoing reasons, Snap respectfully requests the Court dismiss the complaint with prejudice as to the '362, '439, and '599 patents.

| | | |
|---|---|---|
| 1 | DATED: March 5, 2021 | PAUL HASTINGS LLP |
| 2 | | |
| 3 | | By: */s/ Yar R. Chaikovsky* |
| 4 | | Yar R. Chaikovsky (SB# 175421) |
| | | yarchaikovsky@paulhastings.com |
| 5 | | Philip Ou (SB# 259896) |
| 6 | | philipou@paulhastings.com |
| | | David Okano (SB#278485) |
| 7 | | davidokano@paulhastings.com |
| 8 | | Bruce Yen (SB# 277920) |
| | | bruceyen@paulhastings.com |
| 9 | | PAUL HASTINGS LLP |
| 10 | | 1117 S. California Avenue |
| | | Palo Alto, California 94304-1106 |
| 11 | | Telephone: 1(650) 320-1800 |
| 12 | | Facsimile: 1(650) 320-1900 |
| 13 | | Steven A. Marenberg (SB# 101033) |
| 14 | | PAUL HASTINGS LLP |
| | | 1999 Avenue of the Stars, Twenty- |
| 15 | | Seventh Floor |
| 16 | | Los Angeles, CA 90067 |
| | | Telephone: 1(310) 620-5710 |
| 17 | | Facsimile: 1(310) 620-5810 |
| 18 | | *Attorneys for Defendant* |
| 19 | | SNAP INC. |