| | |
|---|---|
| 1 | Alan P. Block (SBN 143783) |
| | ablock@mckoolsmith.com |
| 2 | MCKOOL SMITH HENNIGAN, P.C. |
| | 300 South Grand Avenue, Suite 2900 |
| 3 | Los Angeles, California 90071 |
| | Telephone: (213) 694-1200 |
| 4 | Facsimile: (213) 694-1234 |
| 5 | David Sochia (TX SBN 00797470) *(Pro Hac Vice)* |
| | dsochia@McKoolSmith.com |
| 6 | Ashley N. Moore (TX SBN 24074748) *(Pro Hac Vice)* |
| | amoore@McKoolSmith.com |
| 7 | Alexandra F. Easley (TX SBN 24099022) *(Pro Hac Vice)* |
| | aeasley@McKoolSmith.com |
| 8 | McKool Smith, P.C. |
| | 300 Crescent Court, Suite 1500 |
| 9 | Dallas, Texas 75201 |
| | Telephone (214) 978-4000 |
| 10 | Facsimile: (214) 978-4044 |
| 11 | James E. Quigley (TX SBN 24075810) *(Pro Hac Vice)* |
| | jquigley@McKoolSmith.com |
| 12 | McKool Smith, P.C. |
| | 303 Colorado Street, Suite 2100 |
| 13 | Austin,, Texas 78701 |
| | Telephone: (512) 692-8700 |
| 14 | Facsimile: (512) 692-8744 |
| 15 | Attorneys for Plaintiff |
| | PALO ALTO RESEARCH CENTER INC. |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., <br><br> Plaintiff. <br><br> v. <br><br> SNAP, INC., <br><br> Defendant. | Case No. 2:20-cv-10755-AB-MRW <br><br> **PALO ALTO RESEARCH CENTER INC.'S RESPONSE TO SNAP, INC.'S MOTION TO STAY PENDING INTER PARTES REVIEW** <br><br> DATE: July 2, 2021 <br> TIME: 10:00AM <br> COURTROOM: 7B <br> JUDGE: Hon. André Birotte Jr. |

**Table of Contents**

Page(s)

I. INTRODUCTION ................................................................................................1
II. BACKGROUND .................................................................................................2
III. LEGAL STANDARD ..........................................................................................3
IV. EACH FACTOR WEIGHS AGAINST SNAP'S MOTION TO STAY ...3
   A. The Status of the Case Supports Denying Stay ...............................3
   B. A Stay Will Not Simplify the Issues in Question ............................6
   C. A Stay Will Prejudice PARC and Give Snap a Tactical Advantage ........................................................................................8
V. CONCLUSION ...................................................................................................9

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
　No. SACV 10-1582-DOC, 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011) .............................. 7

*CANVS Corp. v. U.S.*,
　118 Fed. Cl. 587 (Fed. Cl. 2014) ........................................................................................... 3

*Clinton v. Jones*,
　520 U.S. 681 (1997) ............................................................................................................... 3

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
　No. 8:18-cv-2043-DOC-ADSx, 2020 WL 2084674 (C.D. Cal. Jan. 13, 2020) ..................... 5

*Intellectual Ventures II LLC v. BITCO Genl. Insur. Corp., et al.*,
　No. 6:15-cv-00059-JRG, 2016 WL 4870346 (C.D. Cal. Mar. 4, 2016) ................................. 9

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) ............................................................................................................... 3

*Nike, Inc. v. Skechers U.S.A., Inc.*,
　No. 2:19-cv-9230-MWF-JDEx, 2020 WL 8512299 (C.D. Cal. Dec. 30, 2020) ................ 4, 5

*Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*,
　No. 2:18-cv-9344-GW-JCx, 2019 WL 11717183 (C.D. Cal. May 14, 2019) ........................ 7

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
　No. 6-16-cv-RWS-JDL, 2017 WL 3712916 (E.D. Tex. Feb. 3, 2017) ................................... 9

*Reversible Connections LLC v. GBT Inc.*,
　No. 8:17-cv-1254-JVS-JCGx, 2018 WL 5099712 (C.D. Cal. Mar. 23, 2018) ............... 3, 6, 7

*Segin Sys. v. Stewart Title Guar. Co.*,
　30 F.Supp.3d 476 (E.D. Va. 2014) ........................................................................................ 8

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
　No. SACV 12-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ................................... 7

*Signal IP v. Am. Honda Motor Co., Inc.*,
　No. 14-cv-02454-JAK (JEMx), 2016 WL 4870346 (C.D. Cal. Mar. 4, 2016) ....................... 9

*Smartflash LLC v. Apple Inc.*,
　621 F. App'x 995 (Fed. Cir. 2015) ........................................................................................ 8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
　943 F. Supp. 2d 1028 (C.D. Cal. 2013) ................................................................................. 3

**OTHER AUTHORITIES**

FED. R. CIV. P. 26(f) ................................................................................................1

FED. R. CIV. P. 33(d) ................................................................................................5

McKOOL SMITH, P.C.

## I. INTRODUCTION

To justify its requested stay, Snap largely ignores that this case does not stand alone. This case is a part of related proceedings involving Facebook's and Twitter's infringement of the same patents. Snap's only mention of those two other cases comes at the end of its motion when Snap summarily concludes that such "unrelated litigation with overlapping issues is irrelevant" to evaluating the appropriateness of its requested stay. Mot. at 9. Snap is incorrect.

First, each case involves the same two patents that Snap is currently challenging before the PTAB. Based on this overlap, the parties largely agreed to (and the Court adopted) a consolidated schedule that presumes all three parties are involved. Dkts. 39, 44. In the Rule 26(f) Report, the parties memorialized their agreement on a number of discovery issues that assume the three cases proceed in tandem. Dkt. 39 at 14. Snap's proposed stay would disrupt the schedule and related discovery. By the time a stay is lifted (as early as December 2021), claim construction will be done, expert reports will be served, and discovery will be nearing completion. Snap should not be allowed a self-imposed stay simply on the *chance* that its IPRs will institute.

Moreover, institution is no guarantee. Nearly 50% of IPR petitions are *not* instituted. Of those that do institute, only 28% proceed to a final written decision, where 68% of the final decisions cancel all claims, 18% find all claims patentable, and 14% are mixed. Dkt. 45-4 at 11. In other words, **only 23% of all filed petitions lead to the invalidation of one or more challenged claims**. This is a far cry from Snap's "near 97% probability that at least some of the claims will be invalidated."

Finally, it is extremely prejudicial to allow Facebook and Twitter (through Snap's IPRs) two bites at the apple for claim construction and validity (to say nothing of the free preview of PARC's case strategy). Snap has not agreed to be bound by the Court's claim constructions for the '599 and '439 Patents, nor have Facebook or Twitter agreed to be bound by the results of Snap's IPRs or the same IPR estoppel as Snap. In sum, Snap's IPR petitions exacerbate—rather than simplify—the issues

Case 2:20-cv-10755-AB-MRW   Document 46   Filed 06/11/21   Page 5 of 14   Page ID #:1865

McKool Smith, P.C.

PARC's RESPONSE TO SNAP, INC.S MOTION TO STAY PENDING IPR    NO. 2:20-CV-10755-AB-MRW

before the Court. PARC respectfully requests that Snap's motion be denied given the unique circumstances presented by these related proceedings.

## II.  BACKGROUND

On November 24, 2020, PARC filed suit against Snap asserting infringement of the '599, '439, and '362 Patents. Dkt. 1. On that same day, PARC filed two other closely related cases against Facebook and Twitter. The Facebook case is based on infringement of the '599, '439, '781, '871, '475, '584, and '190 Patents, and the Twitter case similarly involves infringement of the '599, '439, '781, '871, '475, and '362 Patents. Dkt. 1, 2:20-cv-10753-AB-MRW; Dkt. 1, 2:20-cv-10754-AB-MRW.

On March 16, 2021, the Court ruled on Defendants' motions to dismiss the '599, 439, '362, '781, and '871 Patents for claiming unpatentable subject matter. Dkt. 36. The Court denied Defendants' motions as to the '599, '439, and '781 Patents, but granted the motions as to the '362 and '871 Patents. *Id.*[1] On May 19, 2021, the Court entered a Scheduling Order governing this proceeding, and set each of the three cases for trial beginning on May 31, 2022. Dkt. 44. The Court's Scheduling Order sets the first claim construction deadline on July 2, 2021, the opening expert reports deadline on November 5, 2021, and the close of all discovery on December 31, 2021. *Id.*

Discovery has been progressing since the Court's Order on Defendants' motions to dismiss. On April 30, 2021, PARC served interrogatories and requests for production, and Defendants served their responses on June 1. Snap initially refused to produce any documents in this case, despite its June 1 deadline to do so, Ex. B at 2, but has now produced already-public documents (that do not meaningfully impact the deficiencies PARC has identified to Snap) and suggested it will produce other materials. PARC served its infringement contentions on May 11, and Defendants will serve invalidity contentions on June 15. Dkt. 44.

On May 21, 2021, Snap filed two IPR petitions challenging the validity of the

---

[1] In light of the Court's motion to dismiss ruling, the "Patents-in-Suit" are now the '599, '439, '781, '475, '584, and '190 Patents.

'599 and '439 Patents. Dkt. 45-2, 45-3. Institution decisions on Snap's IPR petitions are expected in December 2021. If the PTAB institutes one or both of Snap's petitions, a final written decision is not expected until December 2022—six months after Facebook's and Twitter's trial(s) on the merits on the very same patents.

### III. LEGAL STANDARD

A court has the inherent power to control its docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

When evaluating whether a stay is appropriate, courts consider the following factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1031 (C.D. Cal. 2013) (internal citation and quotation marks omitted). As the moving party, Snap bears the burden of establishing that a stay is appropriate and "such showing must be based on more than the mere fact that a petition for inter partes review was filed." *CANVS Corp. v. U.S.*, 118 Fed. Cl. 587, 591-92 (Fed. Cl. 2014) (internal citations omitted). A stay pending an administrative proceeding is not automatic; "the totality of the circumstances governs." *Reversible Connections LLC v. GBT Inc.*, No. 8:17-cv-1254-JVS-JCGx, 2018 WL 5099712, at *2 (C.D. Cal. Mar. 23, 2018) (internal citation and quotation marks omitted).

### IV. EACH FACTOR WEIGHS AGAINST SNAP'S MOTION TO STAY

#### A. The Status of the Case Supports Denying Stay

The status of these related proceedings weighs against a stay. Notably, Snap's motion only includes a passing reference to the Court's May 31, 2022 trial date. Yet this quickly approaching trial date favors denial of a stay, as the Court will hold trial(s) on these same patents for Facebook and Twitter six months before the PTAB renders

any final written decision, as shown below:

- November 24, 2021: PARC files suit against all Defendants (*e.g.*, Dkt. 1);
- April 30, 2021: PARC serves its first ROGs and RFPs (Exs. A, B);
- May 11, 2021: PARC serves infringement contentions (*e.g.*, Dkt. 45-5);
- May 14, 2021: All parties serve initial disclosures (*e.g.*, Exs. C, D);
- May 21, 2021: Snap files IPRs (Dkts. 45-2, 45-3);
- June 1, 2021: Defendants respond to PARC's ROGs and RFPs. Parties to confer about Defendants' deficient responses and non-production (*e.g.*, Exs. A, B, E);
- June 15, 2021: Defendants to serve their invalidity contentions (Dkt. 44);
- September 24, 2021: Court to hold claim construction hearing (*id.*);
- November 5, 2021: PARC to serve opening expert reports (*id.*);
- December 2021: PTAB issues institution decisions (*id.*);
- December 31, 2021: Fact and expert discovery close (*id.*);
- May 31, 2022: Trial (*id.*); and
- December 2022: PTAB issues final written decision(s) (if IPRs institute).

It is clear from these dates that if Snap's IPRs are denied, a stay would do nothing more than disrupt the Court's ability to efficiently and effectively manage its docket, and put PARC at an extreme tactical disadvantage. And even if the IPRs are instituted, at best the final written decision would be months *after* Facebook's and Twitter's trial(s) on the merits of the same patents. Thus, if it grants Snap's motion, the Court will potentially have to expend additional resources on additional rounds of claim construction, dispositive motions, *Daubert* motions, pretrial, and trial.

    The facts noted above are akin to those in *Nike, Inc. v. Skechers U.S.A., Inc.*, No. 2:19-cv-9230-MWF-JDEx, 2020 WL 8512299 (C.D. Cal. Dec. 30, 2020). In *Nike*, Judge Fitzgerald denied a request for a stay and stated: "[e]ven if the PTAB

institutes IPR proceedings, this action will likely be ready for trial before the PTAB issues a final decision—a decision that could then be appealed." *Id.* at *1. This is the exact situation here. Trial is set for May 2022, which is six months before any PTAB final written decision (even assuming institution occurs). The situation at hand is also similar to *Nike* because "[b]y the time the PTAB decides whether to institute IPR [December 2021], the parties will have already made several exchanges and completed a claim construction hearing [September/October 2021]." *Id.*; *see also Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. 8:18-cv-2043-DOC-ADSx, 2020 WL 2084674, at *2 (C.D. Cal. Jan. 13, 2020) (holding that this factor "counsels against a stay" where "while more discovery remains, the parties have already undertaken some discovery and expended resources to do so"). The Court should therefore deny Snap's request.

Snap's main justification for a stay relies on its suggestion that discovery has just begun. However, to the extent that is accurate, it is due to Snap's refusal to comply with its own discovery obligations. Snap largely responded to PARC's ROGs with a laundry list of objections and citation to FED. R. CIV. P. 33(d) without any reference to actual documents. *See* Ex. A. And until the day before this response, Snap failed to produce a single document, using Snap's stonewalling on the protective order as cover for its failure.[2] *See* Ex. B. Snap has now produced 1,347 documents, all of which appear to be publicly available.

Snap's motion also notes that "[n]o depositions have been scheduled or taken place." Mot. at 4. This is again an issue of Snap's own making. Snap lists just one employee, an accounting manager, in its initial disclosures—no engineers or anyone involved in the development or inner workings of the accused products. Snap's refusal to identify any employees knowledgeable about the accused features is puzzling given

---

[2] For the last seven weeks, the parties have been negotiating the terms of the protective order. After PARC circulated edits on May 27, the parties participated in a lengthy meet and confer to discuss the terms of proposed protective order on June 3, and Defendants finally followed up with their latest round of edits this morning.

5
PARC's RESPONSE TO SNAP, INC.S MOTION TO STAY PENDING IPR   NO. 2:20-CV-10755-AB-MRW

1  that PARC's discovery requests specifically ask Snap to identify the employees most
2  knowledgeable about (i) the accused features and (ii) Snap's relevant financial
3  information and sales data. Ex. A. Without these names, or any of the requested sales
4  data or financial information, depositions are difficult to take.

5  This stands in stark contrast to PARC, which has produced 1,500 documents,
6  totaling 9,039 pages, including PARC-internal documentation and more than 900
7  confidential documents, despite Snap not yet serving any discovery requests. PARC
8  also expended substantial resources preparing its infringement contentions, which
9  consist of nearly two hundred pages of charts detailing PARC's infringement
10 allegations. These contentions include many dozens of screenshots, citations to
11 publicly available information, and a narrative explanation to aid Snap's
12 understanding. PARC's actions are indicative of its heavy investment and significant
13 efforts to comply with its discovery obligations and the Court's Orders. Snap's failure
14 to engage in similar efforts should not be rewarded with a stay.

15 **B.    A Stay Will Not Simplify the Issues in Question**

16 The second factor—simplification of the issues—also weighs against a stay.
17 Snap argues that "the petitions have the potential to fully resolve—or otherwise
18 significantly simplify all of Plaintiff's infringement claims." Mot. at 6. Snap is again
19 wrong.

20 First, PARC has asserted six patents across the three related cases, yet Snap's
21 IPR petitions cover only two of those patents. In each related case, PARC asserts the
22 same two patents addressed in Snap's IPR petitions. Yet neither Facebook nor Twitter
23 have filed IPRs, mentioned IPRs, agreed to estoppel based on Snap's IPR filings, or
24 requested a stay in light of Snap's IPR petitions. As a result, Facebook and Twitter
25 could try to re-raise invalidity arguments that Snap would be estopped from raising
26 due to the IPR proceedings.

27 In *Reversible Connections*, a court in this district found such a scenario would
28 not simplify the issues in question. This was because "the remaining defendants ha[d]

not agreed to be bound by the statutory estoppel provisions." 2018 WL 5099712 at *2. In fact, it would complicate the issues because the other defendants "would be able to re-raise…any invalidity arguments not raised by [the IPR petitioner] or not ruled upon in writing by the PTAB during the instituted IPR." *Id.*; *see also Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*, No. 2:18-cv-9344-GW-JCx, 2019 WL 11717183, at *4 (C.D. Cal. May 14, 2019) ("However, the fact that Adobe has only filed an IPR petition for one of the seven asserted patents, and does not agree to be bound by the full statutory estoppel provisions for the third-party IPRs filed against the asserted patents, strongly warrants against a stay."); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST JPRX, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012) ("The estoppel effect of inter partes review carries less weight when there are several defendants that are not parties to, and thus are not bound by, the estoppel effects of the proceeding."). Thus, Snap's IPRs are unlikely to result in simplification.

Second, Snap is incorrect that its IPRs are "likely" to do anything. Contrary to Snap's argument, the likelihood of invalidation is nowhere near a "97% and an 89% chance."[3] Mot. at 6. Rather, Snap manipulates the statistics to carve out all petitions where institution is denied or is otherwise dismissed before a decision on the merits. Dkt. 45-4 at 11. The fact is at least 40% of petitions are not instituted, over 30% of petitions result in settlement, and **only 23% of all filed petitions lead to the invalidation of one or more challenged claims**. *Id.* Snap should not be permitted to derail this proceeding on the narrow chance that the PTAB may institute one or both of the filed petitions and subsequently invalidate some subset of the asserted claims. Snap's request increases the burden on the Court, is based on incorrect speculation on its IPRs' likely success rate, and thus should be denied.

---

[3] These statistics are insufficient to warrant a say. *See Biomet Biologics, LLC v. Bio Rich Med. Inc.*, No. SACV 10-1582-DOC, 2011 WL 4448972, at *3 (C.D. Cal. Sept. 26, 2011) (noting that a party's reliance on statistics is insufficient to warrant a stay).

### C. A Stay Will Prejudice PARC and Give Snap a Tactical Advantage

Snap discounts the tactical advantage it gains with its proposed stay, arguing the Facebook and Twitter cases are "irrelevant." Mot. at 9. This is disingenuous at best. PARC asserts the same patents against Facebook and Twitter, neither of whom has filed an IPR, agreed to be bound by the results of (or estoppel from) Snap's IPRs, or requested a stay. Thus, Snap will have the benefit of sitting on the sideline to watch claim construction, infringement, validity, summary judgment, *Daubert*, pretrial, and trial play out. Then Snap can adjust its approach in its much later case with PARC's entire playbook in Snap's possession. Snap may even request another opportunity to argue claim construction or depose the inventors of the patents. And all of this is true regardless of whether Snap's IPRs are instituted or denied. At its core, Snap's motion gives all Defendants two bites at the apple for a variety of case dispositive issues. This is quintessential prejudice and tactical advantage. *See Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1003 (Fed. Cir. 2015); *Segin Sys. v. Stewart Title Guar. Co.*, 30 F.Supp.3d 476, 484 (E.D. Va. 2014) (noting the "unfair tactical advantage" that would result from defendants having two bites of the apple and thus finding that this factor "weighs strongly in favor of denying a stay").

Snap also receives an unfair tactical advantage through its self-imposed discovery stay. On April 30, PARC served 19 interrogatories and 84 requests for production on Snap. Although Snap served its responses to PARC's discovery requests on June 1 (Exs. A-B), Snap has not provided substantive, good-faith interrogatory responses or produced anything other than what appear to be publicly available documents. Instead, Snap has chosen to use this pending motion and its delay in agreeing to a protective order as grounds for refusing to answer interrogatories and refusing to produce the vast majority of documents responsive to PARC's requests. Snap's attempt to use its motion as cover for failing to comply with its discovery obligations is bad enough. But this tactic also gives Snap months to study PARC's contentions, while simultaneously denying PARC access to the same

8

PARC's RESPONSE TO SNAP, INC.S MOTION TO STAY PENDING IPR   NO. 2:20-CV-10755-AB-MRW

information Snap will use to formulate its non-infringement theories. This gives Snap yet another unfair advantage.

Snap's case law also supports denial of a stay. *See* Mot. at 9. For example, in *Realtime Data, LLC v. Hewlett Packard Enter. Co.,* the court analyzed the third factor and noted the following: "lack of statutory estoppel tips the prejudice factor against a stay because without an estoppel binding a particular defendant … that defendant could retain the right to present a nearly full-blown prior art case for the Asserted Patents[.]" No. 6-16-cv-RWS-JDL, 2017 WL 3712916, at *4 (E.D. Tex. Feb. 3, 2017) (internal citation and quotation marks omitted). And in *Signal IP v. Am. Honda Motor Co., Inc.*, the court held that this factor did not favor granting a stay and emphasized that "[a] stay w[ould] have a prejudicial effect because a plaintiff has a legitimate interest in having the issues timely resolved." No. 14-cv-02454-JAK (JEMx), 2016 WL 4870346, at *4 (C.D. Cal. Mar. 4, 2016). Snap's citation to *Intellectual Ventures II LLC v. BITCO Gen. Insur. Corp., et al.* is also unpersuasive. In *Intellectual Ventures*, the court consolidated two related actions, but unlike the situation here, all of the defendants in that consolidated proceeding jointly filed IPR petitions and moved for a stay. No. 6:15-cv-00059-JRG, 2016 WL 4394485, at *1 (E.D. Tex. May 12, 2016). As such, the prejudice to PARC weighs against granting a stay.

## V.  CONCLUSION

For the reasons stated above, PARC respectfully requests that the Court deny Snap's motion in its entirety.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: June 11, 2021 | Respectfully submitted, |
| 3 | | MCKOOL SMITH, P.C. |
| 4 | | BY: /s/ *David Sochia* |
| | | David Sochia |
| 5 | | |
| 6 | | Alan P. Block (SBN 143783) |
| | | ablock@mckoolsmith.com |
| 7 | | **MCKOOL SMITH HENNIGAN, P.C.** |
| 8 | | 300 South Grand Avenue, Suite 2900 |
| | | Los Angeles, California 90071 |
| 9 | | Telephone: (213) 694-1200 |
| 10 | | Facsimile: (213) 694-1234 |
| 11 | | David Sochia *(Pro Hac Vice)* |
| | | dsochia@McKoolSmith.com |
| 12 | | Ashley N. Moore *(Pro Hac Vice)* |
| 13 | | amoore@McKoolSmith.com |
| | | Alexandra F. Easley *(Pro Hac Vice)* |
| 14 | | aeasley@McKoolSmith.com |
| 15 | | **MCKOOL SMITH, P.C.** |
| | | 300 Crescent Court, Suite 1500 |
| 16 | | Dallas, Texas 75201 |
| 17 | | Telephone (214) 978-4000 |
| | | Facsimile: (214) 978-4044 |
| 18 | | |
| 19 | | James E. Quigley *(Pro Hac Vice)* |
| | | jquigley@McKoolSmith.com |
| 20 | | **MCKOOL SMITH, P.C.** |
| 21 | | 303 Colorado Street, Suite 2100 |
| | | Austin,, Texas 78701 |
| 22 | | Telephone: (512) 692-8700 |
| 23 | | Facsimile: (512) 692-8744 |
| 24 | | ATTORNEYS FOR PLAINTIFF |
| | | PALO ALTO RESEARCH CENTER INC. |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

MCKOOL SMITH, P.C.