YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
DAVID OKANO (SB# 278485)
davidokano@paulhastings.com
BRUCE YEN (SB# 277920)
bruceyen@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

STEVEN A. MARENBERG (SB# 101033)
stevenmarenberg@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, Suite 2700
Los Angeles, California 90067
Telephone: 1(310) 620-5710
Facsimile: 1(310) 620-5270

Attorneys for Defendant
SNAP INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., | CASE NO. 2:20-cv-10755-AB-MRW |
| Plaintiff, | **REPLY IN SUPPORT OF SNAP INC.'S MOTION TO STAY CASE PENDING INTER PARTES REVIEW** |
| vs. | |
| SNAP INC., | DATE: July 2, 2021 |
| Defendant. | TIME: 10:00 AM |
| | COURTROOM: 7B |
| | JUDGE: Hon. André Birotte Jr. |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................... 1
II.     ARGUMENT .................................................................... 1
        A.      Stay will simplify issues in this case. .................................. 1
        B.      Early, pre-*Markman* stage of proceedings favors stay ..................... 6
        C.      A stay will not result in undue prejudice to PARC. ............................ 9
        D.      Totality of the circumstances support a stay ...................................... 12
III.    CONCLUSION ............................................................... 13

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
6
*Aylus Networks, Inc. v. Apple Inc.*,
　856 F.3d 1353 (Fed. Cir. 2017) ............................................................ 3

7
8
*British Telecommc'ns PLC v. IAC/InterActiveCorp*,
　No. 18-cv-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019) ....... 2, 3, 7, 11

9
10
*C.f. Aten Int'l Co., Ltd v. Emine Tech. Co.*,
　No. 09-cv-843-AG, 2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) ..................... 5

11
12
*DataQuill Ltd. v. TCL Commc'n Tech. Holdings Ltd.*,
　No. 19-CV-3394-AB, 2020 WL 3884436 (C.D. Cal. Apr. 24, 2020).......... *passim*

13
14
*DivX, LLC v. Netflix, Inc.*,
　No. 19-CV-1602-PSG, 2020 WL 3026034 (C.D. Cal. May 11,
　2020) ................................................................................................. 2, 3

15
16
*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
　No. 18-cv-2043-DOC, 2020 WL 2084674 (C.D. Cal. Jan. 13, 2020) ................. 9

17
18
*Evolutionary Intel., LLC v. Apple, Inc.*,
　No. C13-4201-WHA, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014) ..................... 11

19
20
*Evolutionary Intel., LLC v. Sprint Nextel Corp.*,
　No. C-13-cv-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28,
　2014) ..................................................................................................... 2

21
22
*Guy A. Shaked Inv. v. Trade Box*,
　No. 19-cv-10593-AB, Dkt. 56 (C.D. Cal. Nov. 18, 2020) ................................. 7

23
24
*IOENGINE, LLC v. PayPal Holdings, Inc.*,
　No. 18-cv-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019)..................... 7

25
26
*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*,
　No. 17-cv-1914-CJC, 2019 WL 116784 (C.D. Cal. Jan. 2, 2019)....................... 8

27
28
*Masimo Corp. v. Sotera Wireless*,
　No. 19-CV-1100-BAS, 2021 WL 321481 (S.D. Cal. Feb. 1, 2021) ................... 11

*Milwaukee Elec. Tool Corp. v. Hilti, Inc.*,
   138 F. Supp. 3d 1032 (E.D. Wis. 2015) ................................................................ 2

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016) ........................................................................... 5

*NFC Tech. LLC v. HTC Am., Inc.*,
   No. 13-cv-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11,
   2015) (Bryson, J., sitting by designation) ............................................................ 3

*Nike, Inc. v. Skechers U.S.A., Inc.*,
   No. 19-CV-9230-MWF, 2020 WL 8512299 (C.D. Cal. Dec. 30,
   2020) ...................................................................................................................... 8

*Philips North Am. LLC v. Garmin Int'l, Inc.*,
   No. 19-cv-6301-AB, Dkt. 125 (C.D. Cal. Feb. 25, 2021) .............................. 2, 12

*Purecircle USA Inc. v. SweeGen, Inc.*,
   No. 18-cv-1679-JVS, 2019 WL 3220021 (C.D. Cal. June 3, 2019) .................... 5

*Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*,
   No. 18-cv-9344-GW, 2019 WL 11717183 (C.D. Cal. May 14,
   2019) ...................................................................................................................... 4

*Reversible Connections LLC v. GBT Inc.*,
   No. 17-cv-5383-JVS, 2018 WL 5099712 (C.D. Cal. Mar. 23, 2018) ............. 4, 12

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) .................................................................... 1

*SCA Hygiene Prod. Aktiebolag v. Tarzana Ents, LLC*,
   No. 17-cv-4395-AB, 2017 WL 5952166 (C.D. Cal. Sept. 27, 2017) .......... 2, 5, 9

*Segin Sys. v. Stewart Title Guar. Co.*,
   30 F. Supp. 3d 476 (E.D. Va. 2014) .................................................................. 10

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
   No. 12-CV-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ................. 4, 7

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
   No. 18-cv-356-AB, 2019 WL 1091335 (C.D. Cal. Feb. 12, 2019) ............ 8, 9, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Smartflash LLC v. Apple Inc.*,
   621 F. App'x 995 (Fed. Cir. 2015) ........................................................ 10

*Weserve Drone, LLC v. SZ DJI Tech. Co.*,
   No. 19-cv-4382-AB, 2020 WL 4373365 (C.D. Cal. Mar. 17, 2020) .......... 5, 9, 12

**Statutes**

35 U.S.C. §101 ............................................................................... 6, 10

35 U.S.C. § 315(b) ............................................................................ 4, 7

35 U.S.C. § 315(e) ........................................................................ 3, 4, 10

**Other Authorities**

Rule 11 .......................................................................................... 9

Rule 12 .......................................................................................... 6

Rule 26(f) ...................................................................................... 6, 7

1    **I.      INTRODUCTION**

2           A common thread throughout PARC's opposition is its contention that a stay

3    should be denied because PARC has also asserted the patents at issue in this case in

4    two other related proceedings against different defendants. PARC's unstated

5    premise—that a litigant's ability to create complexity by bringing multiple actions

6    with overlapping patents should outweigh the opportunity to simplify one of those

7    related actions—is not consistent with the Court's inherent power to manage its

8    docket for the "economy of time and effort." *See Rivers v. Walt Disney Co.*, 980 F.

9    Supp. 1358, 1360 (C.D. Cal. 1997). The Court's considerations, not PARC's, should

10   dictate whether the totality of circumstances favors stay. Here, the Court should

11   exercise its discretion and stay pending resolution of Snap's IPR petitions.

12   **II.     ARGUMENT**

13          **A.      Stay will simplify issues in this case.**

14          PARC has no substantive response to the fact that Snap's IPRs challenge all

15   remaining asserted claims against Snap *in this case*, and thus a stay may obviate the

16   need for PARC's case against Snap to proceed at all. *See DataQuill Ltd. v. TCL*

17   *Commc'n Tech. Holdings Ltd.*, No. 19-CV-3394-AB, 2020 WL 3884436, at *2 (C.D.

18   Cal. Apr. 24, 2020) ("[B]ecause Defendants have filed *inter partes* review petitions

19   with respect to each of the patents *at issue in this case*, a decision by the PTAB

20   instituting *inter partes* review and re-examining the validity of both patents will

21   certainly simplify the issues for trial." (emphasis added)). Instead, PARC focuses on

22   its decision to sue multiple parties with multiple patents (Dkt. 46 "Opp." 6:20

23   ("PARC has asserted six patents across the three related cases")), suggesting that by

24   its own strategic litigation choices, it can prevent simplification of this dispute.

25          PARC is mistaken. With respect to this case, stay pending IPR will potentially

26   allow complete resolution of PARC's dispute with Snap by the U.S. Patent and

27   Trademark Office ("Patent Office") without requiring wasteful parallel litigation in

28   this Court. *See DataQuill*, 2020 WL 3884436, at *2.

But even in context of the related but separate cases, PARC's logic is flawed. This factor analyzes "merely whether the issues will be simplified, and not whether the entire case will be resolved." *Milwaukee Elec. Tool Corp. v. Hilti, Inc.*, 138 F. Supp. 3d 1032, 1038 (E.D. Wis. 2015); *Evolutionary Intel., LLC v. Sprint Nextel Corp.*, No. C-13-cv-4513-RMW, 2014 WL 819277, at *4 (N.D. Cal. Feb. 28, 2014) ("likel[ihood] that the IPR will simplify the case . . . has long been the standard for weighing this factor in favor of a stay"). Here, given the multiple proceedings and multiple asserted patents, potential elimination of two of the six asserted patents across **all** cases will simplify issues for trial by "mak[ing] the task of dealing with the remaining claims significantly easier." *British Telecommc'ns PLC v. IAC/InterActiveCorp*, No. 18-cv-366-WCB, 2019 WL 4740156, at *8 (D. Del. Sept. 27, 2019) (Bryson, Circuit Judge, sitting by designation); *see Philips North Am. LLC v. Garmin Int'l, Inc.*, No. 19-cv-6301-AB, Dkt. 125 at 5 (C.D. Cal. Feb. 25, 2021) ("[E]ven when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable[.]" (citing *British Telecom*)).

In *British Telecom*, the patentee opposed a stay because "the district court litigation w[ould] not be wholly mooted" by the IPRs. *British Telecom*, 2019 WL 4740156, at *7. But Judge Bryson concluded: "While it is true that the IPR will not address all of the claims at issue in the district court litigation, the Court nonetheless believes it is highly likely that the IPR will result in simplification of the district court proceedings." *Id.* Moreover, even if PARC's claims survive IPR, "the case would still be simplified because [Snap] would be limited in which arguments it could raise before this Court." *See SCA Hygiene Prod. Aktiebolag v. Tarzana Ents, LLC*, No. 17-cv-4395-AB, 2017 WL 5952166, at *4 (C.D. Cal. Sept. 27, 2017). Further, Snap's proceeding will "provid[e] the court with expert opinion of the [PTAB] and clarify[] the scope of the claims." *DataQuill*, 2020 WL 3884436, at *2; *DivX, LLC v. Netflix, Inc.*, No. 19-CV-1602-PSG, 2020 WL 3026034, at *3 (C.D. Cal. May 11, 2020)

(Parties could "make characterizations about the scope of the claim language in IPR proceedings that become relevant to their disputes in this case, even to claims not challenged in IPR"); *NFC Tech. LLC v. HTC Am., Inc.*, No. 13-cv-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J., sitting by designation) (describing seven specific "benefits of the reexamination process for cases in litigation . . . that appl[y] equally to *inter partes* review").

Other courts in this district, when faced with stay motions for multi-defendant, multi-patent consolidated actions where not all claims have been challenged in IPRs, have still concluded that "judicial resources would be better served by at least waiting to see the outcomes of pending IPR petitions." *DivX*, 2020 WL 3026034, at *3 (granting pre-institution stay where "even if the PTAB institutes IPR proceedings for all of the challenged claims before it, there will be asserted patent claims in this case that will necessarily remain for adjudication").

PARC bemoans the possibility that "Facebook and Twitter could try to re-raise invalidity arguments that Snap would be estopped from raising" (Opp. 6:24–26), but effectively concedes that for Snap—the party seeking stay here—the IPR will streamline issues remaining for trial due to statutory estoppel under 35 U.S.C. § 315(e). But even for Facebook/Twitter, the Patent Office's evaluation of prior art and positions taken during IPR and pre-institution will become part of the prosecution history. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction."); *British Telecom*, 2019 WL 4740156, at *8 ("[T]he IPR proceeding may produce additional prosecution history that could assist the Court in addressing the issues of claim construction and validity."). PARC's speculation about what Facebook and Twitter might do ignores that the Patent Office's claim construction and "assessment of the pertinent prior art will likely be instructive in the district court litigation." *Id.* at *7.

PARC's attempt to distract the Court from the stay analysis *in this action* and to condition stay for Snap on PARC's speculation about what Facebook or Twitter might do (Opp. 6:22–24), and at any rate, are entitled to do,  further highlights the weakness of its position *with respect to Snap's case* and should be rejected. Indeed PARC's own cited authority acknowledges that the stay analysis may differ for differently-situated defendants. *See Reversible Connections LLC v. GBT Inc.*, No. 17-cv-5383-JVS, 2018 WL 5099712, at *3–4 (C.D. Cal. Mar. 23, 2018) (finding simplification "factor thus weigh[ed] in favor of a stay as to [defendant who filed IPRs] and is neutral or weighs slightly against a stay as to the remaining defendants [who had not agreed to be bound]").[1]

Further, PARC's retreat to estoppel ignores two key points. <u>First</u>, PARC assumes without evidence that because Facebook/Twitter have not filed IPRs now, the Court cannot consider the possibility they may file IPRs in the future, within the prescribed statutory window for doing so. *See* 35 U.S.C. § 315(b). If Facebook and/or Twitter file their own IPRs on the overlapping patents, they will also face estoppel under 35 U.S.C. § 315(e). <u>Second</u>, the extent of estoppel on other defendants goes to the *weight* of estoppel in the overall analysis of the simplification factor. *See Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-CV-21-JST, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012) ("The estoppel effect of *inter partes* review carries less weight when there are several defendants that are not parties to, and thus are not bound by, the estoppel effects of the proceeding."). Lack of estoppel alone does not, as asserted by PARC, "exacerbate—rather than simplify—the issues." (Opp. 1:28.) As this Court explained, where an "IPR Petition has the potential to fully resolve—if not significantly simplify—[] patent infringement

---

[1] PARC's citation to *Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*, No. 18-cv-9344-GW, 2019 WL 11717183 (C.D. Cal. May 14, 2019) is similarly misplaced. There, the *party seeking stay* had filed a single IPR, was relying on third-party IPRs for claims of five additional asserted patents, and did not agree to be bound for purposes of estoppel by those third-party IPRs. *Id.* at *3–4.

1   claims," the simplification factor favors stay. *Weserve Drone, LLC v. SZ DJI Tech.*

2   *Co.*, No. 19-cv-4382-AB, 2020 WL 4373365, at *3 (C.D. Cal. Mar. 17, 2020).

3        Finally, PARC's assertion that "institution is no guarantee" (Opp. 1:17) is a

4   reason to deny stay is an argument that has been rejected in this district. *See SCA*

5   *Hygiene*, 2017 WL 5952166, at *4 (finding simplification weighed in favor of stay

6   and rejecting patentee argument it was "speculative to assume the Patent Office will

7   institute proceedings or cancel any claims"); *see also Murata Mach. USA v. Daifuku*

8   *Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) ("The burden litigation places on the court

9   and the parties when IPR proceedings loom is one such consideration that district

10  courts may rightfully choose to weigh."); *See Purecircle USA Inc. v. SweeGen, Inc.*,

11  No. 18-cv-1679-JVS, 2019 WL 3220021, at *3 (C.D. Cal. June 3, 2019) ("[C]ourts

12  in this District have adopted the majority position that even if IPR has not yet been

13  instituted, the simplification factor may still weigh in favor of a stay"). Justification

14  for a stay does not require judges to conclude that simplification is "guarantee[d],"

15  but only that simplification is likely. *C.f. Aten Int'l Co., Ltd v. Emine Tech. Co.*, No.

16  09-cv-843-AG, 2010 WL 1462110, at *7 (C.D. Cal. Apr. 12, 2010) (rejecting

17  patentee contention that "any outcome from reexamination is speculative, and thus

18  there is no guarantee that any of the [asserted] claims would be narrowed" in analysis

19  of simplification factor).

20        Even if PARC's claim that Snap's petitions have a "narrow chance" (Opp.

21  7:21–23) of being instituted and some subset of claims invalidated were correct (it is

22  not[2]), PARC ignores the substantial proportion (32%) of petitions in the past year

23  that have concluded by settlement. (Opp. 7:19–20, citing Mot. Ex. C, 11.)[3] Settlement

---

[2] The parties' percentages drawn from the Patent Office statistics are different
because Snap's calculations take into account that two petitions were filed, and the
higher likelihood there will be at least one cancelled claim across those two petitions.
(Dkt. 45 "Mot." 1:16–2:2.) In contrast, PARC's percentages focus on one petition in
isolation, ignoring that Snap filed IPRs on both remaining patents in this case.
[3] Similarly, PARC's claim that "[n]early 50% of IPR petitions are *not* instituted"
(Opp. 1) appears to include both denied petitions (33%) and settled disputes pre-
institution (17%). Mot. Ex. C, 10-11. As referenced below, petitions that settle
likely reflect an agreement between the parties that resolves related district court

1  would almost certainly achieve the goal of simplifying these proceedings. Thus, the
2  petitions are more likely than not to result in simplification when considering both
3  the chances of claim reduction and/or resolution of the parties' disputes.

4       In short, Snap's IPR petitions, which challenge all PARC's asserted claims
5  against Snap, are likely to simplify both the case against Snap and PARC's litigation
6  campaign in this district. The simplification factor weighs in favor of stay.

7       **B.     Early, pre-*Markman* stage of proceedings favors stay.**

8       As explained in Snap's motion, the stage of the case favors stay. (Mot. 4:16–
9  6:12.) Indeed, the timeline in PARC's opposition (Opp. 4:2–17) emphasizes the early
10  stage of the case and Snap's diligence in seeking a stay ***before*** the Court and the
11  parties have expended substantial resources.

12  - November 25, 2020: PARC files complaint against Snap
13  - February 17, 2021: Snap responds to complaint with Rule 12 motion to dismiss
14    all patents asserted by PARC under 35 U.S.C. §101 (Dkt. 31)
15  - March 16, 2021: Court issues order invalidating '362 patent (Dkt. 36)
16  - May 11, 2021: PARC serves infringement contentions (Mot. Ex. D)
17  - May 21, 2021: Snap files IPRs on remaining patents (Mot. Exs. A, B)
18  - May 21, 2021: Rule 26(f) conference (Dkt. 32)
19  - June 3, 2021: Snap files motion to stay
20  - August 17 and 31, 2021: Opening and responsive claim construction briefs
21  - September 24, 2021: *Markman* hearing
22  - May 31, 2022: First trial date (Dkt. 44)

23       Less than two weeks after PARC served its infringement contentions
24  identifying the claims it asserts against Snap, and less than two months after the Court
25  issued its opinion on Snap's motion to dismiss all asserted patents, Snap filed IPRs
26  on the remaining patents in suit. *See Semiconductor Energy*, 2012 WL 7170593, at

27  _____

28  litigation. PARC's attempt to distort PTAB statistics cannot change the fact that
   Snap's filed IPRs are likely to result in simplification.

*3 (not "unreasonable" for defendant to wait "a mere three to four months from receiving the claim contentions" to file IPRs). Similarly, courts have found it "reasonable for [] defendants to wait for [a] Court's ruling on [] motion[s] to dismiss before filing their IPR petition[s]. *See British Telecom*, 2019 WL 4740156, at *5. Less than two weeks after the Rule 26(f) conference, Snap filed this motion to stay. Yet PARC contends this factor weighs against a stay because of the "quickly approaching trial date"—a date that is almost a year away. (Opp. 3:25–27.)

Under PARC's logic, this factor would likely weigh against stay for *any* party who waited to receive the plaintiff's infringement contentions under this Court's 18-month trial timeline in its default scheduling order. PARC's calculus would transform this factor into a near-automatic strike against defendants instead of part of the totality of the circumstances considered in the stay analysis.

It would also be inconsistent with Congress's intent in setting the statutory deadline for filing IPRs to 12 months from service of the complaint. 35 U.S.C. § 315(b). Snap filed its IPRs within six months of service of the complaint, well within the statutory time limits. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-cv-452-WCB, 2019 WL 3943058, at *6 (D. Del. Aug. 21, 2019) ("[T]he Court finds that in light of the complexity entailed in seeking *inter partes* review, a delay of six months from the filing of the complaint is not unreasonable."). Yet under PARC's position, Snap's diligence would be penalized without inquiry into the specific circumstances of the case because of this Court's default time-to-trial. PARC's attempt to create a *de facto* rule distorts the inquiry and should be rejected.

Under the proper inquiry, the stage of the proceedings favors stay. Snap was served just over six months ago, and thus this case is in its "early stages." *See Guy A. Shaked Inv. v. Trade Box*, No. 19-cv-10593-AB, Dkt. 56 at 2 (C.D. Cal. Nov. 18, 2020) (case in "early stages" when defendant served eight months earlier). As this Court has observed, this factor can favor stay when "more work lies ahead for the Court and the parties than what lies behind them." *Sleep No. Corp. v. Sizewise*

*Rentals, LLC*, No. 18-cv-356-AB, 2019 WL 1091335, at *2 (C.D. Cal. Feb. 12, 2019). There can be no dispute that discovery only recently opened, Snap just served initial invalidity contentions, and *Markman* has not begun. (Dkt. 44, 3.)

Moreover, while a trial date has been set, that date is a year away. This Court has explained that a "trial date alone . . . does not negate the fact that [a] case is in its earliest procedural stages." *DataQuill*, 2020 WL 3884436, at *2 (staying pre-institution where trial was "approximately nine months away"). More importantly, "the parties hav[e] exchanged only limited discovery and the Court ha[s] expended few resources on this case." *Id.* PARC recounts its version of early discovery progress by the parties (Opp. 5:13–6:14), devoting as much space to Snap's alleged discovery deficiencies than it does to analyzing the relevant legal factors, which highlights the substantive weakness on the merits of its position.[4] Regardless, only one round of discovery has occurred. *See Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. 17-cv-1914-CJC, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) (case in "early stages" where "parties have exchanged only one round of written discovery").

PARC's cited cases are inapposite. In *Nike, Inc. v. Skechers U.S.A., Inc.*, No. 19-CV-9230-MWF, 2020 WL 8512299, at *1 (C.D. Cal. Dec. 30, 2020), the parties were "currently engaged in claim construction" and the defendant "waited almost a year after it was served with the Complaint to file its IPR petitions." Unlike *Nike*, the parties have not begun the *Markman* process, with the first exchange of proposed claim terms not set to occur until next month, and the *Markman* hearing more than three months away. (Dkt. 44, 3–4.) This Court, "like other courts, considers the status of claim construction proceedings a significant turning point in evaluating this

---

[4] PARC's discovery complaints lack merit. As PARC notes, the parties continue to meet and confer to negotiate the terms of the protective order. (Opp. 5 n.2.) In good faith, Snap has offered its source code for inspection earlier this week. Further, two weeks ago, Snap raised concerns with respect to the scope of PARC's discovery requests and the lack of meaningful detail in PARC's infringement contentions. The parties have already arranged to confer on these issues early next week.

factor." *Sleep No.*, 2019 WL 1091335, at \*2. Here with the stage of proceedings well before this "significant turning point," this factor favor stay.

In *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. 18-cv-2043-DOC, 2020 WL 2084674, at \*2 (C.D. Cal. Jan. 13, 2020), the defendant waited more than nine months after the scheduling conference to file its IPRs. This delay was notable given the defendant's IPR only needed to challenge a "single claim in the [asserted] patent at issue in this action." *Id.* Here, PARC's initial complaint identified every independent claim in the three asserted patents (Dkt. 1, ¶¶ 44, 69, 96), and its infringement contentions identified 34 claims. (Mot. Ex. D, 2.)[5]

### C.   A stay will not result in undue prejudice to PARC.

PARC's opposition does not meaningfully contend that delay due to a stay would result in undue prejudice. Nor could it, as PARC and Snap are not direct competitors (Mot. 8:10–16). *See Weserve Drone*, 2020 WL 4373365, at \*3 ("While delay alone is not sufficient to deny an otherwise meritorious stay request, it can support the denial of a stay where the parties compete with each other."). Moreover, the '599 patent issued in 2013 and the '439 patent issued in 2015 (Dkt. 1, Exs. A, B). PARC waited more than five years to file suit against Snap, which according to PARC, had "entered the social media scene" in 2011, well before the asserted patents had issued (Dkt. 1, 1:23–24). *See SCA Hygiene*, 2017 WL 5952166, at \*5 ("arguments of prejudice are unpersuasive" where plaintiff "delayed in bringing [] action in the first place").

Rather, PARC's primary contention for this factor is the vague and conclusory assertion that Snap's stay "gives all Defendants two bites at the apple," and thus is "quintessential prejudice." (Opp. 8:11–13.) PARC contends that Snap will watch how "claim construction, infringement, validity, summary judgment, *Daubert*, pretrial, and trial play out" and will be able to approach its case with PARC's "entire

---

[5] To the extent PARC seeks to rely on its infringement contentions as progress in discovery, this analysis should have been part of PARC's pre-suit investigation to satisfy its Rule 11 obligations, and should not be credited to discovery efforts.

playbook in Snap's possession." (Opp. 8:6–8.) PARC does not describe with any specificity how Snap's "sitting on the sidelines" will unduly prejudice PARC. Indeed, PARC's case against Facebook and Twitter involve different patents (Opp. 2:4–9.), and as to the patents asserted against Snap—should they even proceed—Snap will be subject to the estoppel provisions under 35 U.S.C. § 315(e). With respect to infringement, summary judgment, and trial, because Snap, Facebook, and Twitter are competitors, Snap will not have access to many documents, deposition testimony, financial information, and source code underlying key disputes on summary judgment, and will likely have limited access to any Facebook or Twitter trial. (Dkt. 39, 8–9.)   In short, PARC's high-level, conclusory claims of "prejudice" are sweeping generalities, ungrounded in the actual circumstances of this case, and do not provide "a specific showing of prejudice" necessary to tip the scales on this factor. *See DataQuill*, 2020 WL 3884436, at *2.[6]

Further, to the extent any prejudice exists, *PARC* elected to sue multiple parties for infringement of separate products on multiple patents. *PARC* sought and obtained consolidation of the cases before a single judge, arguing that doing so would be "in the best interests of judicial economy." (Dkt. 4, 3:4–5.) *PARC*'s litigation strategy decisions ensured that the parties with the later trial dates will see some portion of PARC's "playbook" at trial before their own trials. (Dkt. 39, 25:17–18 ("PARC further proposes that the cases pending against Snap, Twitter, and Facebook be tried in succession . . .").) PARC should not be allowed to complain that the same tactical

---

[6] PARC's cited cases are inapposite. Neither supports the notion there is undue prejudice where one party's case is stayed pending IPR while other related cases proceed. In *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1003 (Fed. Cir. 2015), Apple "wait[ed] to submit its [CBM] petitions until almost the eve of trial," which allowed it to pursue full, duplicative § 101 defenses in district court and at the Patent Office without any estoppel. In contrast, § 101 defenses are unavailable in IPR, and IPR estoppel will apply to Snap. In *Segin Sys. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 484–85 (E.D. Va. 2014), the parties were direct competitors and the court denied the motion without prejudice "to renew the Motion to Stay when and if the PTAB grant[ed] review."

benefits it sought by filing these concurrent actions now will result in unfair tactical disadvantage for purpose of this stay.

Indeed, that the cases were assigned to the same judge emphasizes that stay is an appropriate action here. PARC represented that "each case calls for determinations of substantially related or similar questions of law and fact, and would entail substantial duplication of labor if heard by different judges." (Dkt. 4, 1:7–9.) Snap's stay motion minimizes the chance this "duplication of labor" by different judges will occur. *See British Telecom*, 2019 WL 4740156, at *8 ("[A]llowing the PTO to adjudicate the validity of the claims before it in the IPR proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this Court."); *Evolutionary Intel., LLC v. Apple, Inc.*, No. C13-4201-WHA, 2014 WL 93954, at *3 (N.D. Cal. Jan. 9, 2014) (noting there is "little benefit to be gained from having two forums review the validity of the same claims at the same time" and granting pre-institution stay motion in case involving multiple patents asserted against different defendants). Indeed, the grant of a stay here would be consistent with PARC's asserted justification for consolidating Snap's, Facebook's, and Twitter's cases: allowing both this case and PTAB proceedings to continue in parallel would create "a substantial risk of inconsistent rulings related to the overlapping patents by different judges." (Dkt. 4, 2:19–20.)

Without a stay, it is likely that different judges (at the Patent Office and this Court) will be evaluating similar invalidity arguments of the remaining patents asserted against Snap, and the "substantial risk of inconsistent rulings" wielded by PARC to justify consolidation will exist. *See Masimo Corp. v. Sotera Wireless*, No. 19-CV-1100-BAS, 2021 WL 321481, at *3 (S.D. Cal. Feb. 1, 2021) ("[C]oncurrent proceedings in this venue and before the PTAB could lead to inconsistent results and prove a wasteful use of the limited time and resources of both the parties and the adjudicators."). If PARC is truly serious about minimizing Snap's ability to "sit[] on the sideline" (Opp. 8:6), PARC can agree to stay proceedings on the '599 and '439

patents pending Snap's IPRs in all three actions or stipulate to a short delay in the case schedule, as suggested by cases PARC cited. *See Reversible Connections*, 2018 WL 5099712, at *4 (suggesting "the parties may seek to amend the scheduling order to delay the *Markman* hearing until after the PTAB decides whether to grant IPR").

While PARC makes vague and conclusory claims of prejudice that result from its own litigation strategy, it is silent on the traditional factors considered in this district for evaluation of this factor. (*See* Mot. 7:13–19, 8:7–12.) As discussed above in section I.B, Snap's diligence in filing both its IPRs and this stay motion mean that the timing considerations under this factor weigh strongly in favor of a stay. *See Weserve Drone*, 2020 WL 4373365, at *4 (factor "weighs strongly in favor of [] stay" even where IPRs were not "swiftly filed" when patentee is not a competitor and can be compensated with monetary damages); *Sleep No.*, 2019 WL 1091335, at *4 ("substantial delay" in asserting patent "undercuts Plaintiff's arguments regarding undue prejudice"). [7] Nor has PARC demonstrated any "specific showing of prejudice," including any showing "how granting a stay will injure its revenues or give a competitive advantage to Defendants." *Philips*, 19-cv-6301-AB, Dkt. 125, 6.

### D.    Totality of the circumstances support a stay.

PARC provides no response to Snap's explanation of how "[w]eighing the totality of circumstances" supports stay. *See DataQuill*, 2020 WL 3884436, at *3. Here, the totality of circumstances supports a stay pending IPR in at least the Snap action: the case is in its early stage of proceedings, Snap's petitions challenge all asserted claims and will simplify the proceedings regardless of the outcome of the IPR, and a stay will not impose undue prejudice to PARC.

---

[7] PARC again attempts to distract from the stay analysis here by injecting irrelevant discovery disputes into its opposition. (Opp. 8:18–9:2.) PARC's inflammatory rhetoric accusing Snap of not providing interrogatory responses in "good faith" is unnecessary and uncalled for (and inaccurate). As indicated above, Snap has expressed concerns about PARC's discovery requests and offered to meet-and-confer with PARC to resolve these issues. This case is in its early stages and Snap's investigation is ongoing. Snap will continue to comply with its discovery obligations to the extent fact discovery progresses.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   CONCLUSION

Snap requests the Court to grant its motion and stay case no. 20-cv-10755 pending resolution of IPR2021-987 ('599 patent) and IPR2021-986 ('439 patent).

DATED: June 18, 2021                    PAUL HASTINGS LLP


By: */s/ Yar R. Chaikovsky*
Yar R. Chaikovsky (SB# 175421)
yarchaikovsky@paulhastings.com
Philip Ou (SB# 259896)
philipou@paulhastings.com
David Okano (SB#278485)
davidokano@paulhastings.com
Bruce Yen (SB# 277920)
bruceyen@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

Steven A. Marenberg (SB# 101033)
PAUL HASTINGS LLP
1999 Avenue of the Stars, Twenty-
Seventh Floor
Los Angeles, CA 90067
Telephone: 1(310) 620-5710
Facsimile: 1(310) 620-5810

*Attorneys for Defendant*
SNAP INC.